UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

JUAN ALONSO, et al., on behalf of
themselves and all others similarly
situated,

                 Plaintiffs,        08 Civ. 7813 (DAB)
                                          MEMORANDUM AND ORDER

           -against-

UNCLE JACK's STEAKHOUSE, INC., et al.,

                 Defendants.
----------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/09

DEBORAH A. BATTS, United States District Judge.

On December 28, 2008, Plaintiffs filed a Motion seeking conditional certification of a collective action and court facilitation of notice, as well as Defendants' production of employee information under FLSA § 216(b).[1]  For the reasons that follow, Plaintiff's motion to proceed as a FLSA collective action is GRANTED; Plaintiffs' motion for court facilitated discovery and notice is GRANTED subject to further conditions stated herein.

## I. DISCUSSION

The Fair Labor Standards Act (the "FLSA") was created to "eliminate low wages and long hours" as well as to "free commerce from the interference arising from production of

---

[1] Plaintiffs' motion papers do not seek to obtain Rule 23 certification of their New York state law claims.  As such, the Court makes no determinations regarding Rule 23 class certification at this time.

goods under conditions that were detrimental to the health and well being of workers." McGuiggan v. CPC Int'l, Inc., 84 F.Supp.2d 470, 478 (S.D.N.Y. 2000). The FLSA regulates minimum wages and overtime wages paid by employers engaged in interstate commerce. Liu v. Donna Karan Int'l. Inc., 2001 WL 8595, at *1 (S.D.N.Y. Jan. 2, 2001).

Article 16(b) of the FLSA states in relevant part that: "An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Plaintiffs have asked the Court to certify a conditional class of similarly situated employees at the Uncle Jack's Steakhouse restaurants, and facilitate Notice to other employees so that they might "opt-in" to Plaintiffs' suit. In addition, the parties present disputes about the propriety of notice and the extent of discovery of information regarding potential opt-in Plaintiffs.

    A.    "Similarly Situated"

The statute requires the Court to analyze whether Plaintiffs' proposed class includes individuals who are

2

indeed "similarly situated." Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery. Cuzco v. Orion Builders, Inc., 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007; Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); Masson v. Ecolab, Inc., 2005 WL 2000133, at *12-14 (E.D.N.Y. Aug. 18, 2005). Accordingly, a Court first determines whether class members are similarly situated based on pleadings and affidavits. Scholtisek, 229 F.R.D. at 387; Cuzco, 477 F.Supp.2d at 632. Following this determination, notification of class members proceeds according to a court-ordered plan, providing the opportunity for those notified to "opt-in" to the action. Scholtisek, 229 F.R.D. at 387. After discovery, the Court re-examines the record to determine whether the claimants are indeed similarly situated. Id. If they are not, the class can be decertified at that time and the claims of dissimilar "opt-in" plaintiffs dismissed without prejudice. Id.

Neither the FLSA nor its accompanying regulations define the term "similarly situated." However, when determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA. Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978). To maintain a collective action under the FLSA, a named plaintiff bears the burden of

3

showing that others are "similarly situated"; the test is "whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." Davis v. Lenox Hill Hosp., 2004 WL 1926086, at *7 (S.D.N.Y. 2004). Courts have held that this burden is "minimal." Cuzco, 477 F.Supp.2d at 632-633, (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 106 (S.D.N.Y. 2003)). A plaintiff can satisfy this burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Realite v. Ark Restaurants Corp., 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998), Gjurovich, 282 F.Supp.2d at 104, Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997).

Therefore, the appropriate inquiry at this pre-discovery stage is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits. Plaintiffs' Motion for Conditional Class Certification is supported by allegations in the Amended Complaint, as well as declarations submitted by nine individual employees. These nine employees affirm that Defendants withheld a portion of their tips while simultaneously paying them less than the minimum wage, (see Shteynberg Aff. ¶ 6; Zapata Aff. ¶ 7; Prieto Aff. ¶ 7; Lopez Aff. ¶ 7; Naranjo Aff. ¶ 7; Monge Aff.

4

¶¶ 4-10; Olvera Aff. ¶¶ 6-12; Corcoran Aff. ¶¶ 6-13; Arias Reply Aff.¶¶ 7-14; see also Amend. Compl. ¶¶ 75-79), in violation of the "tip credit" provision of the FLSA. See Chung v. New Silver Palace Restaurant, Inc., 246 F.Supp.2d 220, 230 (S.D.N.Y. 2002) (citing 29 U.S.C. § 203(m)).

While Defendants are correct that Plaintiffs do not plead the failure to pay a minimum wage as a separate count in their Amended Complaint, the factual allegations in the Amended Complaint and Affirmations clearly plead sufficient facts to make out such a claim. Accordingly, although the Court may order Plaintiffs to further amend their Complaint under Fed. R. Civ. Pro. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count."), it nevertheless finds that Plaintiffs' allegations were sufficient to place Defendants on notice of their claims related to their alleged failure to pay the minimum wage under the FLSA.

Nine Affiants also affirm that Defendants did not compensate them fully for their overtime work, in violation of the FLSA. (See Shteynberg Aff. ¶ 7; Zapata Aff. ¶ 8; Prieto Aff. ¶ 8; Lopez Aff. ¶ 8; Naranjo Aff. ¶ 8; Corcoran Aff. ¶¶ 3-5; Olvera Aff. ¶¶ 3-4; Monge Aff. ¶¶ 11-15, Ex. A; Arias Reply Aff. ¶¶ 3-6, Ex. A; see also Amend. Compl. ¶¶ 96-99). Finally, four Affiants affirm that Defendants

retaliated against them as a result of their participation in the present lawsuit. (See Zapata Aff. ¶¶ 10-14; Prieto Aff. ¶¶ 10-13; Lopez Aff. ¶¶ 10-11; Arias ¶¶ 10-15; see also Amend. Compl. ¶¶ 120-23).

Defendants' contention that these affirmations "do not state anything about other employees" is plainly incorrect. (Def's Opp. Mem. of Law at 6). Plaintiffs' affirmations state that Defendants' overtime practices as well as the percentage of "large party" tips that were allegedly taken by management resulted from Defendants' general policies towards its employees. (See, e.g., Shteynberg Aff. ¶¶ 3-6 ("Uncle Jack's engaged in a scheme whereby it kept for itself and its managers 60 percent of all gratuities for 'large parties'") (emphasis added); Monge Aff. ¶ 9 ("My understanding is that, as a result of its actions, Uncle Jack's violated minimum wage laws with respect to me and all other tipped employees in the tip pool."); Olvera Aff. ¶ 13 ("While I do not know the precise number of hours worked by other employees, I certainly observed many other employees coming to work early and working late hours as I did.")).[2]

---

[2] In addition, Plaintiffs have responded to Defendants' contention that Plaintiffs' affirmations contradict its Amended Complaint in terms of the percentage of tips withheld from large parties, (Defs.' Mem. Of Law, 5), by clarifying in its reply submissions that the Amended Complaint correctly states the percentage and that the first round of affirmations erroneously inverted the percentage of gratuities withheld from the actual figure of 40 percent to 60 percent. (Pls.' Mem. Of Law, 3) (citing Corcoran Aff. ¶¶ 6-11; Arias Reply Aff. ¶ 8; Monge Aff. ¶¶ 3-7; Olvera Aff. ¶¶

Finally, Defendants have submitted their own affidavits from numerous employees of their restaurants, each of which denies that the employee has been subject to violations of the FLSA. (Wyn Kane Aff., Ex. 1). However, as an initial matter, four of these affidavits were submitted by employees who began employment <u>after</u> Plaintiffs' suit was filed on September 5, 2008. This makes their own experiences with Defendants' employment practices of little or no probative value, given that Defendants would have undoubtedly ceased any improper practices after suit was filed. Furthermore, only two of Defendants' supporting employees began work prior to September of 2007 and none prior to April of 2006. (Id.). In contrast, Plaintiffs' affidavits are submitted by employees who each began employment prior to 2007 and, in many cases, prior to 2005. (See, e.g., Zapata Aff. ¶ 2; Lopez A. ¶ 2; Olvera Aff. ¶ 2). Thus, Defendants' affidavits, even if the Court fully credited them, would demonstrate at most that Defendants did not engage in improper employment practices during the period immediately prior to the lawsuit as to those particular employees. However, given that none of Defendants' affidavits attach time cards or paystubs to counter those that are attached to Plaintiffs' affidavits, the Court does not so credit Defendants' affidavits. (See Monge Aff. ¶¶ 11-15, Ex. A; Arias Reply Aff. ¶¶ 3-6, Ex. A).

---

5-9).

7

The absence of such evidence is telling, given that it is implausible that neither Defendants' restaurants nor any of its employees who support its position kept such records.

In any event, Defendants cite to no authority which suggests that the provision of contradictory affidavits - even were the Court to give them the full significance ascribed to them by the Defendants - would be sufficient to prevent Plaintiffs from meeting their "minimal" burden of a "modest factual showing" on its motion for conditional certification under FLSA. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 106 (S.D.N.Y. 2003).

Accordingly, because Plaintiffs have met their burden in showing that there is a factual nexus between the claims of the individual Plaintiffs and potential opt-in Plaintiffs, and that other employees appear "similarly situated" to the named Plaintiffs, the Court grants Plaintiffs' Motion for Conditional Certification.

B. Court Authorization of Notice

It is well settled that courts may authorize notice when a plaintiff has demonstrated that he and potential plaintiffs are similarly situated. See Gjurovich, 282 F.Supp.2d at 104 (quoting Sbarro, 982 F.Supp. at 261); Young, 229 F.R.D. at 54. The Supreme Court has noted that "[b]oth the parties and

8

the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." Hoffmann-La Roche, 493 U.S. 165, 171-172 (1989). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id., at 172

Neither the statute, nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain. The Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such "details" should be left to the broad discretion of the trial court. Hoffmann-La Roche, 493 U.S. at 170 ("We confirm the existence of the trial court's discretion, not the details of its exercise.").

When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions. The Notice provisions of 216(b) were intended to achieve judicial efficiency by settling the claims of similarly situated employees at the same time. Hoffmann, 493 U.S. at 170, 110 S.Ct. 482. Proceeding in a collective action also allows plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of

9

resources." Id. Yet, these benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.

The Defendants in this action raise issues regarding the provision of Notice which are either premature or meritless. (Defs.' Mem. of Law at 9-10). Further, the Defendants have not provided their own proposed notice, but rather have merely objected to Plaintiffs' notice. As such, the Court adopts the proposed notice letter submitted by the Plaintiffs subject to the single modification described herein. (Rooney Aff. Ex. B).

First, the Court rejects Defendants' argument that discovery should be denied because Plaintiffs have "not established that a collective action is appropriate under the law and based on their submissions," (Defs.' Mem. Of Law, 9), given that it merely rehashes an argument the Court has already rejected in granting conditional certification. Furthermore, although Defendants may be correct that some of its current and former employees have not suffered any damages under the FLSA, Plaintiffs have made a sufficient showing that others have suffered such damage to justify notice being sent to all potentially similarly situated employees.

The Court does find, however, that Defendants' objection to the disclosure of social security numbers is persuasive at this juncture. Plaintiffs assert that they would use employees' social security numbers "for the sole purpose of performing skip traces <u>in the event</u> opt-in Plaintiffs' addresses are incorrect or outdated." (Plts.' Reply. Mem. Of Law, 10) (emphasis added). Consequently, the Court denies the request for disclosure of social security numbers "without prejudice to its renewal after disclosure of the other information from defendants on a more ample showing of how the information is necessary to identify class members." <u>Gayle v. Harry's Nurses Registry, Inc.</u>, 2009 WL 605790, *11 (Mar. 9, 2009, E.D.N.Y. 2009).

## II. CONCLUSION

Accordingly, Conditional Class Certification is GRANTED for all hourly employees of Defendants' three restaurants listed in Paragraph 5 of the Amended Complaint. Plaintiffs shall submit an amended Notice of Lawsuit and Consent to Sue to the Court within (10) days. The Court finds that Plaintiffs are entitled to discovery of the names, last known email addresses, telephone numbers, dates of employment, and current or last known addresses of all hourly workers employed by the Defendants restaurants over three years from the date of the original Complaint. Defendants shall provide

Plaintiffs with this information within (30) days of the date of this Order. Opt-in Plaintiffs shall have (90) days from the date the Defendant produces those names and addresses to file Consent to Sue letters with this Court.

SO ORDERED.

Dated: New York, New York
       July 24, 2009

*Deborah A. Batts*

Deborah A. Batts
United States District Judge

12