Paul P. Rooney (PR-0333)
Amanda M. Fugazy (AF-6772)
FUGAZY & ROONEY LLP
225 Broadway, 39th Floor
New York, NY 10007
(212) 346-0570

*Attorneys for Plaintiffs, collective action members,*
*and putative class members*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
JUAN ALONSO, ABELARDO ARIAS, JAIME LOPEZ, RON
MENIN, LUIS NARANJO, HECTOR OLVERA, PEDRO                     08 Civ. 7813 (DAB)
ORTIZ, LEONDARDO PRIETO, ARKADY SHTEYNBERG,
VICTOR SOLIS, ALEJANDRO TORRES, LUIS XURUC,
and IVAN ZAPATA, on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

        -against-

UNCLE JACK'S STEAKHOUSE, INC., UNCLE JACK'S
OF BAYSIDE, INC., UNCLE JACK'S STEAKHOUSE
FRANCHISE, INC., UNCLE JACK'S STEAKHOUSE
MIDTOWN, INC., WILLIAM J. DEGEL, THOMAS
CARPENTER, AND DENNIS BOROSOWSKI,

                        Defendants.
------------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**


Dated: January 10, 2011
        New York, New York

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

SUMMARY OF FACTS ......................................................................................................2

ARGUMENT ...................................................................................................................11

  I.   THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER
      PLAINTIFFS' STATE LAW CLAIMS ..........................................................................11

  II.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE CERTIFIED FOR CLASS
      TREATMENT PURSUANT TO RULE 23 .....................................................................12

  III. PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION
      UNDER FEDERAL RULE 23(a) .................................................................................14

     A.  Class Members Are Sufficiently Numerous that Joinder Is Impracticable ................14

     B.  Class Members Share Common Questions of Law and Fact ....................................16

     C.  Plaintiffs' Claims Are Typical of the Claims of the Class ..........................................18

     D.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ...................19

  IV. PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION
      UNDER FEDERAL RULE 23(b) .................................................................................20

     A.  Common Questions of Law and Fact Predominate ..................................................21

     B.  Class Treatment Is Superior to Other Available Methods for Fairly and
        Efficiently Adjudicating the Claims .......................................................................22

CONCLUSION...............................................................................................................24

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Plaintiffs[1] in support of their Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Plaintiffs seek to certify a class consisting of all current and former captains, waiters, runners, bussers and bartenders (collectively, "Class Members") who worked for Uncle Jack's Steakhouse, Inc., Uncle Jack's of Bayside, Inc., Uncle Jack's Steakhouse Midtown, Inc., William Degel, Thomas Carpenter and Dennis Borysowski (collectively, "Defendants" or "Uncle Jack's") predating six years from the filing of this action on September 5, 2008.[2]

The Court should grant the motion because it is the only practical way the proposed class, which Plaintiffs estimate has no fewer than 300 members, to obtain justice in a reasonably efficient and cost-effective manner, and all requirements of Rule 23 are met.

On October 28, 2008, Plaintiffs filed an Amended Complaint (the "Complaint") on behalf of themselves and all others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and New York Labor Law ("NYLL"), § 650 *et seq.* Plaintiffs' Complaint asserts five claims under New York law: (1) Uncle Jack's failed to pay Class Members minimum wages; (2) Uncle Jack's failed to pay Class Members overtime wages; (3) Uncle Jack's unlawfully misappropriated Class Members' tips; (4) Uncle Jack's failed to provide spread of hours pay of one hour's pay at the minimum wage when a Class Member's

---

[1] Juan Alonso, Abelardo Arias, Jaime Lopez, Ron Menin, Luis Naranjo, Hector Olvera, Pedro Ortiz, Leonardo Prieto, Arkady Shteynberg, Victor Solis, Alejandro Torres, Luis Xuruc, and Ivan Zapata ("Plaintiffs").
[2] In support of this motion, Plaintiffs submit the Affirmation of Paul P. Rooney, ("Rooney Aff.") attaching thereto Exhibits 1 through 21 (all references hereinafter to "Rooney Ex."). All abbreviations to exhibits cited in the Rooney Affirmation are described therein.

workday was longer than ten hours; and (5) Uncle Jack's failed to provide uniform purchase and cleaning allowances for Class Members' required uniforms.

On July 24, 2009, this Court certified Plaintiffs' FLSA claims as a collective action pursuant to Section 216(b) of the FLSA.  As of the date of the filing of this Motion, fifty-two current or former employees of Uncle Jack's have filed Consents to Sue to pursue their FLSA claims.  Plaintiffs now seek certification of the New York claims as a class action under Rule 23.

The reasons why a class action is an appropriate vehicle for resolving the New York claims in this case are: (1) all Class Members at Uncle Jack's were subjected to the same unlawful misappropriation of their tips by the same common schemes; (2) all were unlawfully denied payment of the minimum wage; (3) all were unlawfully denied overtime pay; (4) all were unlawfully denied uniform cleaning allowances; (5) all were unlawfully denied spread of hours pay.  Accordingly, all of the Class Members should be treated the same.

A class action is the appropriate method to ensure that there are no inconsistent judgments in this matter and that the interests of judicial economy, convenience, and fairness are served.  A class action will ensure that in one proceeding, all of the Class Members at Uncle Jack's will receive the compensation that they are entitled under New York law.

**SUMMARY OF FACTS**

**A.     UNCLE JACK'S IMPOSED UNIFORM WAGE AND HOUR PRACTICES**

Uncle Jack's collectively owns and operates three steakhouse restaurants located in Manhattan and Queens.  Defendant William Degel ("Degel"), the Chief Executive Officer of Uncle Jack's, creates uniform policies and procedures that apply to all three restaurants and maintains active control over all aspects of Uncle Jack's business, including personnel decisions, employee compensation, purchasing, quality control, insurance matters, and the resolution of

2

customer complaints.[3]  Defendant Thomas Carpenter ("Carpenter") is Uncle Jack's Director of Operations and assists Degel in running the three restaurants.[4]  Like Degel, Carpenter is closely involved in all aspects of Uncle Jack's business, including personnel decisions, employee compensation, marketing, payroll, and the creation of Uncle Jack's handbooks consisting of uniform policies and procedures applicable to all Class Members.[5]   Defendant Dennis Borysowski ("Borysowski") served as Uncle Jack's General Manager and his duties included, among other things, running Uncle Jack's payroll.[6]

Uncle Jack's entities are centrally controlled and managed by Degel and Carpenter, who dictate, control and ratify uniform personnel policies and procedures that are applied equally to Class Members at all three restaurants.[7]  All of the Uncle Jack's entities share an interrelation of operations, as all three restaurants use Class Members interchangeably and share, among other things, a common health plan.[8]  As shown below, Uncle Jack's imposes uniform wage and hour practices and policies that are applied equally to all Class Members.

### B.    UNCLE JACK'S DID NOT PAY OVERTIME WAGES

Uncle Jack's' records show that Class Members frequently worked over forty hours per workweek and did not receive any cash wage for any of these overtime hours worked, let alone

---

[3] Rooney Ex. 2, UJ Midtown Dep. 6:12-14, 22-25, 26:21-24; Rooney Ex. 3, Degel Dep. 15:9-16:11; Rooney Ex. 6, Carpenter Dep. 9:7-10, 9:25-10:5, 75:8-11, 82:14-23, 128:10-14; Rooney Ex. 9, Overton Dep. 62:4-63:19.
[4] Rooney Ex. 2, UJ Midtown Dep. 6:12-14, 22-25, 8:8-19, 26:21-24; Rooney Ex. 6, Carpenter Dep. 6:7-8, 7:25-8:4.
[5] Rooney Ex. 2, UJ Midtown Dep. 6:22-7:13, 36:14-19; Rooney Ex. 3, Degel Dep. 30:21-31:18, 32:4-9, 186:11-187:2; Rooney Ex. 6, Carpenter Dep. 8:6-8, 48:19-22.
[6] Rooney Ex. 3, Degel Dep. 33:6-8; Rooney Ex. 4, UJ 34th St. Dep. 31:3-7; Rooney Ex. 6, Carpenter Dep. 13:14-22.
[7] Rooney Ex. 6, Carpenter Dep. 130:13-131:11.
[8] Rooney Ex. 4, UJ 34th St. Dep. 20:7-12; Rooney Ex. 8, Marrano Dep. 71:6-11, 71:17-72:6.

any premium overtime pay.[9]   Uncle Jack's even admits that Class Members did not receive premium overtime pay and that there are no records verifying such payments.[10]   The time records that have been produced in connection with this lawsuit, which Uncle Jack's admits were created in the ordinary course of business,[11] also show that Uncle Jack's manipulated Class Members' time records by shaving off time to make it appear that none of the Class Members worked overtime.[12]   The common practices and policies of failing to pay Class Members overtime wages and shaving Class Members' time affected all Class Members uniformly.[13]   Uncle Jack's manipulative payroll practices extend beyond avoiding its obligation to pay overtime wages to Class Members, as at least five class members were not paid any cash wage.[14]

Uncle Jack's also failed to maintain records from the relevant time period showing the daily number of hours worked by each Class Member,[15] and this failure to maintain adequate time records is a patent violation of state law.   *See* N.Y. Labor Law § 195(4); N.Y. Code Comps. R. & Regs. tit. 12, 137-2.1.   Indeed, because Uncle Jack's failed to comply with New York's recordkeeping requirements, Uncle Jack's will bear the burden of proving that each Class Member was properly compensated for his or her time.   N.Y. Lab. Law § 196(a).

Uncle Jack's will claim that Class Members did not work overtime because it maintained a policy of not scheduling overtime work, yet there were no safeguards in place to ensure that

---

[9] Rooney Ex. 4, UJ 34th St. Dep. 21:21-24:24, 30:7-23; Rooney Ex. 6, Carpenter Dep. 98:19-100:16, 108:13-110:17, 111:15-112:11, 115:9-116:9; Rooney Exs. 12, 14, 18, 20.
[10] Rooney Ex. 2, UJ Midtown Dep. 25:10-26:2; Rooney Ex. 3, Degel Dep. 100:4-101:10, 102:10-20; Rooney Ex. 4, UJ 34th St. Dep. 14:24-15:5, 27:16-19; Rooney Ex. 5, UJ Bayside Dep. 13:17-21, 16:12-16; Rooney Ex. 6, Carpenter Dep. 72:8-12.
[11] Rooney Ex. 4, UJ 34th St. Dep. 9:6-10:3, 10:24-11:1; Rooney Ex. 6, Carpenter Dep. 121:18-125:9.
[12] Rooney Ex. 6, Carpenter Dep. 120:14-121:15; Rooney Exs. 18, 19.
[13] Rooney Ex. 7, Corcoran Dep. 34:8-35:9, 89:5-20, 90:24-91:6; Rooney Ex. 9, Overton Dep. 67:4-20, 71:20-25, 77:9-24, 114:4-5.
[14] Rooney Ex. 6, Carpenter Dep. 35:12-40:9, 43:7-46:3; Rooney Ex. 7, Corcoran Dep. 47:9-48:7.
[15] Rooney Ex. 4, UJ 34th St. Dep. 7:13-8:1; Rooney Ex. 3, Degel Dep. Ex. 17.

4

Class Members were in fact not working overtime.[16]   Indeed, despite this alleged policy, Class Members were often scheduled to work more than forty hours per workweek.[17]   Uncle Jack's will also claim that its time records are inaccurate and that Class Members' schedules are the best record of whether Class Members in fact worked overtime.   This argument is problematic for a number of reasons.   First, Uncle Jack's destroyed Class Members' schedules and almost all daily timecards, and despite its obligation to preserve relevant documents following the initiation of this lawsuit, Uncle Jack's never once attempted to preserve these schedules.[18]   Second, these purported schedules would not accurately reflect he time worked by each Class Member. Specifically, Uncle Jack's requires Class Members to attend daily staff meetings prior to their scheduled shifts, which are typically held one-half hour prior to a Class Member's scheduled shift.[19]   Class Members were also required to perform work both before and after regular business hours,[20] and the extent of this work will likely not be reflected in their schedules.

### C.   UNCLE JACK'S MISAPPROPRIATED CLASS MEMBERS' GRATUITIES

It is undisputed that Uncle Jack's paid Class Members less than minimum wage by taking a purported "tip credit" against the minimum wage under New York law.[21]   New York law provides, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."   N.Y. Lab. Law § 196(d).   Accordingly, pursuant to § 196-d, in order to be eligible

---

[16] Rooney Ex. 6, Carpenter Dep. 85:17-86:12.
[17] Rooney Ex. 7, Corcoran Dep. 67:15-17; Rooney Ex. 9, Overton Dep. 73:16-19.
[18] Rooney Ex. 6, Carpenter Dep. 104:18-105:16; Rooney Ex. 3, Degel Dep., Ex. 17.
[19] Rooney Ex. 3, Degel Dep. 53:7-9; Rooney Ex. 4, UJ 34th St. Dep. 20:23-21:1; Rooney Ex. 5, UJ Bayside Dep. 15:12-15; Rooney Ex. 6, Carpenter Dep. 25:12-14; Rooney Ex. 7, Corcoran Dep. 56:18-24; Rooney Ex. 8, Marrano Dep. 34:4-8.
[20] Rooney Ex. 6, Carpenter Dep. 23:5-24:17.
[21] Rooney Ex. 6, Carpenter Dep. 10:9-12.

for a "tip credit," Uncle Jack's must either allow Class Members to keep all the tips that they receive, or forgo the tip credit and pay Class Members the full hourly minimum wage.  N.Y. Lab. Law § 196(d).

Here, Uncle Jack's maintained a policy of charging a mandatory twenty-five percent gratuity for pre-booked or other large parties and required its patrons to execute a written contract verifying this surcharge.[22]  In violation of § 196-d, Uncle Jack's admits that it maintained a policy imposed by Degel wherein management employees, including Borysowski, retained a portion of the gratuity.[23]  The duties of Borysowski and other management employees, however, primarily consisted of traditional management duties, including promoting and booking the parties and performing general oversight.[24]  Uncle Jack's "party planners" also retained a portion of the gratuity, but the duties of these individuals were management related and did not entail any service to Uncle Jack's patrons.[25]

All three Uncle Jack's restaurants operated on the basis of a "tip pool" in which all Class Members participated.[26]   The portions of the mandatory gratuity misappropriated by management would have gone into the tip pool and shared equally by each Class Member; accordingly, Class Members were uniformly affected by Uncle Jack's theft of their tips.[27]

---

[22] Rooney Ex. 2, Midtown Dep. 21:13-23; Rooney Ex. 3, Degel Dep. 53:13-18, 54:2-4.
[23] Rooney Ex. 2, Midtown Dep. 37:13-20, 39:6-8; Rooney Ex. 4, UJ 34th St. Dep. 15:16-16:5, 16:24-17:5; Rooney Ex. 6, Carpenter Dep. 69:17-22, 75:8-11.
[24] Rooney Ex. 3, Degel Dep. 46:20-47:4; Rooney Ex. 4, UJ 34th St. Dep. 37:15-24; Rooney Ex. 6, Carpenter Dep. 70:3-71:3; Rooney Ex. 7, Corcoran Dep. 51:14-16; Rooney Ex. 9, Overton Dep. 93:16-94:24.
[25] Rooney Ex. 4, UJ 34th St. Dep. 17:24-18:5; Rooney Ex. 6, Carpenter Dep. 71:4-10; Rooney Ex. 9, Overton Dep. 93:3-15.
[26] Rooney Ex. 3, Degel Dep. 135:19-136:3.
[27] Rooney Ex. 4, UJ 34th St. Dep. 16:6-12; Rooney Ex. 5, UJ Bayside Dep. 8:6-24; Rooney Ex. 7, Corcoran Dep. 49:5-11; Rooney Ex. 8, Marrano Dep. 18:19-19:9, 52:20-53:11; Rooney Ex. 9, Overton Dep. 92:18-93:2, 114:5-9.

While Uncle Jack's defense to the claim that it unlawfully took a portion of these gratuities is that the tips were a "service charge," the evidence shows that customers understood this charge to be a gratuity. Specifically, Uncle Jack's did not charge sales tax on the mandatory gratuity and the customer checks associated with these parties characterized this surcharge as a gratuity and not a service charge.[28] Moreover, the New York Court of Appeals recently held that "the statutory language of Labor Law §196-d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees. An employer cannot be allowed to retain these monies." *Samiento v. World Yacht, Inc.,* 10 N.Y.3d 70, 81 (2008).

Nor does the use of the phrase "service charge" on the Large Party Contracts render the 25% charge a "service charge." In fact, the opposite is true. The NYDOL issued an opinion letter on March 11, 2010 explaining *World Yacht's* application to contractual language describing mandatory banquet service fees. In the letter, the NYDOL concluded that (1) the *World Yacht* standard must be applied by examining the totality of the circumstances, (2) if a contract does not describe the purpose of an 18-20% service fee, a reasonable customer would believe that a service fee was a gratuity, and (3) even if a contract explicitly states that a service fee is *not* a gratuity, a reasonable customer might nonetheless believe otherwise depending on the totality of the circumstances. March 11, 2010 NYDOL Letter.[29] In other words, if a restaurant, like Uncle Jack's, simply uses the phrase "service charge" to describe a mandatory charge, "a reasonable customer would believe the service fee was a gratuity." *Id.* The NYDOL letter is the authoritative statement of the law on this issue. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 330-31 (S.D.N.Y. 2010).

---

[28] Rooney Ex. 3, Degel Dep. 62:10-63:4, 65:14-66:9; Rooney Ex. 4, UJ 34th St. Dep. 36:10-21
[29] Rooney Ex. 17.

In the case at bar, Uncle Jack's lost or destroyed the customer bills given to the customers at the end of the large parties.[30]  Regardless, even if those bills said "service charge" next to the 25% mandatory charge, "a reasonable customer would believe the service fee was a gratuity."  In this case, however, a few large party customer bills that still exist, because Plaintiffs possessed them, say "Gratuity" next to the mandatory 25% charge.[31]  In light of this evidence and relevant law, it is indisputable that a "reasonable customer would believe the service fee was a gratuity."

 Since *Samiento* was decided, courts have certified classes in cases alleging that a defendant failed to distribute a gratuity that was purported to be a mandatory service charge.  *See Krebs v. Canyon Club, Inc.,* 880 N.Y.S. 2d 873, 2009 NY Slip Op 50291U (Sup. Ct. 2009).

Uncle Jack's also violated 196-d by admittedly deducting three percent from Class Members' credit card tips for the purported reason of offsetting credit card processing fees.[32]  Uncle Jack's, however, has failed to produce evidence showing credit card processing fees of 3% on average.  Uncle Jack's admits deducting three percent (3%) from Tipped Employees' credit card tips for the purported reason of offsetting credit card processing fees.[33]  Uncle Jack's, however, has no evidence showing credit card processing fees of three percent.  Uncle Jack's Bayside and Uncle Jack's Midtown produced no evidence of incurring *any* credit card interchange fees.  Uncle Jack's 34th Street was able to produce only records showing that it incurred fees of less than two percent (2%).[34]

---

[30] Rooney Ex. 3, Degel Dep. Ex. 17.
[31] Affirmation of William Corcoran dated January 4, 2010, Ex. 1.
[32] Rooney Ex. 2, Carpenter Dep. 23:5-11; Rooney Ex. 3, Degel Dep. 73:8-20, 189:5-7; Rooney Ex. 4, UJ 34th St. Dep. 32:3-18.
[33] Rooney Ex. 2, Carpenter Dep. 23:5-11; Rooney Ex. 3, Degel Dep. 73:8-20, 189:5-7; Rooney Ex. 4, Carpenter Dep. 32:3-18.
[34] Rooney Ex. 3, Degel Dep. Exs. 7-11; Rooney Ex. 4, UJ 34th St. Dep. 41:2-15; Rooney Ex. 5, UJ Bayside Dep. 11:6-12, 12:3-11; Rooney Ex. 6, Carpenter Dep. 90:22-93:5.

These deductions were taken from money that would have gone into the tip pool that all Class Members participated in, and despite Class Members' complaints regarding this practice, Uncle Jack's chose to ignore these concerns and continue this practice unabated.[35]   This misappropriation of tips was substantial, as Uncle Jack's estimates that approximately ninety percent of their sales are processed through credit card payments.[36]

In sum, because Uncle Jack's established an illegal tip misappropriation scheme, it was not entitled to reduce the minimum wages of Plaintiffs and the other Class Members by applying the tip-credit allowance that is available under New York law.  Moreover, by failing to pay any cash wage for overtime work, the wages paid to Class Members fell below minimum wage.

### D.      UNCLE JACK'S FAILED TO PROVIDE SPREAD OF HOURS PAY

Employers must pay "one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required" for "each day in which the spread of hours exceeds 10."  12 NYCRR § 137-1.7.  Uncle Jack's admits that it did not provide spread of hours pay to Class Members and has no records indicating that any such payments were made.[37]   Indeed, Degel was unaware that Uncle Jack's is even required to pay Class Members spread of hours pay.[38]   While Uncle Jack's may claim that Class Members did not work more than ten hours in any given workday, the evidence shows that it was common for Class Members to work a "double shift," or both a lunch and dinner shift, which easily amounted

---

[35] Rooney Ex. 7, Corcoran Dep. 91:14-92:13; Rooney Ex. 8, Marrano Dep. 68:21-24; Rooney Ex. 9, Overton Dep. 114:10-115:8.
[36] Rooney Ex. 3, Degel Dep. 39:23-40:5; Rooney Ex. 6, Carpenter Dep. 93:14-94:6.
[37] Rooney Ex. 2, UJ Midtown Dep. 24:16-25:9; Rooney Ex. 4, UJ 34th St. Dep. 14:17-23; Rooney Ex. 5, UJ Bayside Dep. 13:13-16; Rooney Ex. 6, Carpenter Dep. 72:23-73:5.
[38] Rooney Ex. 3, Degel Dep. 158:7-15.

to ten or more total hours in any given workday.[39]  Uncle Jack's may also argue that Class Members who worked a double shift were given a significant break between shifts, but in such cases the ten hour gap between the beginning and end of the employees' work days would result in liability for spread of hours pay in any event.  Moreover, Uncle Jack's records conclusively show that Class Members worked more than ten hours on any given workday or a split shift.[40]

### E. UNCLE JACK'S FAILED TO PROVIDE UNIFORM CLEANING ALLOWANCES

Pursuant to New York law, "[w]here the employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage… $9.00 per week."  NYCRR § 137-1.8.  Uncle Jack's requires Class Members to wear a uniform consisting of a full tuxedo and bow tie or tuxedo pants, a tuxedo shirt and a paisley vest.[41]  Uncle Jack's, however, admits that it never paid Class Members a uniform cleaning allowance despite the fact that Uncle Jack's understood this to be a common practice in the restaurant industry.[42]

### F. UNCLE JACK'S RETALIATED AGAINST CLASS MEMBERS WHO HAVE JOINED THIS LAWSUIT

In response to this lawsuit, Degel quickly contacted various Class Members to express his displeasure over the lawsuit and threatened their employment if they joined.[43]  Other members of Uncle Jack's management also threatened retaliation against Class Members for joining the lawsuit.[44]  The product of this retaliatory behavior is evidenced by the fact that a number of Class Members were terminated or forced to leave after joining the lawsuit, personnel decisions in

---

[39] Rooney Ex. 4, UJ 34th St. Dep. 28:18-29:4; Rooney Ex. 5, UJ Bayside Dep. 15:16-23; Rooney Ex. 7, Corcoran Dep. 54:23-55:22, 56:25-58:8, 68:23-69:3; Rooney Ex. 9, Overton Dep. 51:18-52:24, 112:17-113:6.
[40] Rooney Ex. 6, Carpenter Dep. 107:12-108:4.
[41] Rooney Ex. 6, Carpenter Dep. 73:6-10, 22-24; Rooney Ex. 7, Corcoran Dep. 36:23-37:3; Rooney Ex. 8, Marrano Dep. 63:3-8.
[42] Rooney Ex. 3, Degel Dep. 159:7-12; Rooney Ex. 6, Carpenter Dep. 73:11-21.
[43] Rooney Ex. 6, Carpenter Dep. 60:11-61:12, 62:5-22; Rooney Ex. 9, Overton Dep. 27:13-28:16.
[44] Rooney Ex. 9, Overton Dep. 39:12-40:19.

which Degel and Carpenter were intimately involved.[45]   Accordingly, Class Members rightfully

feared that Degel sought to terminate anyone involved in the lawsuit.[46]   This fear of reprisal is

not limited to this lawsuit, unfortunately, as Class Members exhibited a genuine fear of

retaliation if they complained of or refused to comply with Uncle Jack's rampant wage and hour

violations.[47]

<u>**ARGUMENT**</u>

**I.     THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**

The federal and state law claims in this case are inextricably intertwined as they involve

the identical issues of whether (1) Uncle Jack's unlawfully applied a tip-credit to the Class

Members and misappropriated their tips, thereby violating federal and state minimum wage laws,

and (2) Uncle Jack's failed to pay overtime wages.   Accordingly, supplemental jurisdiction over

Plaintiffs' state law claims should be exercised pursuant to 28 U.S.C. § 1367.

In *Torres v. Gristede's Operating Corp.,* 2006 U.S. Dist. LEXIS 74039, at *37 (S.D.N.Y.

2006), the Court exercised supplemental jurisdiction over state labor law claims in an FLSA

action, holding that the claims "derive from a common nucleus of operative fact," and that the

parties "would ordinarily be expected to try them all in one judicial proceeding."   Other district

courts in the Second Circuit have similarly exercised supplemental jurisdiction of state law

claims in FLSA cases.   *See, e.g., Brzychnalski v. Unesco, Inc.,* 35 F. Supp. 2d 351, 354

(S.D.N.Y. 1999) (exercising supplemental jurisdiction because overtime claims under FLSA and

NYLL claims are "essentially the same").

---

[45] Rooney Ex. 6, Carpenter Dep. 49:2-11, 52:16-23, 53:22-54:4, 58:7-23; Rooney Ex. 7, Corcoran Dep. 17:17-18:2, 23:6-9, 23:18-24:5, 24:16-26:20; Rooney Ex. 8, Marrano Dep. 61:2-9; Rooney Ex. 9, Overton Dep. 35:21-23.
[46] Rooney Ex. 7, Corcoran Dep. 25:20-25; Rooney Ex. 8, Marrano Dep. 18.
[47] Rooney Ex. 7, Corcoran Dep. 35:10-24, 38:24-39:8, 68:6-21; Rooney Ex. 8, Marrano Dep. 59:14-60:8.

In *Ansoumana v. Gristedes Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001), the Court found that plaintiffs were entitled to bring an FLSA collective action and a Rule 23 class action for state law claims in the same federal case.  The Court explained that:

> [T]his case demonstrates why supplemental jurisdiction should be exercised.  If the related FLSA and Minimum Wage Act claims were to be litigated in parallel fashion, in this court and in the New York Supreme Court, there would be great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation… Congress enacted Section 1367 to avoid such problems.

*Id.* at 96 (citations omitted).  The Court rejected the defendant's contention that a state law class would be too difficult to manage alongside the collective action, reasoning as follows:

> The essential facts and issues are likely to be the same, and pretrial proceedings are not likely to be materially burdensome nor is it likely that the trial will be materially prolonged, if supplemental jurisdiction is exercised over the related Minimum Wage Act claims.  The existence of a longer statute of limitations in a related state claim is not a unique phenomenon, and district courts commonly exercise supplemental jurisdiction in such circumstances…  The same considerations of sound jurisdictional efficiency and economy should apply…  Plaintiffs properly chose a federal forum to vindicate their federal rights to be paid a minimum wage…[t]heir suit will not be undermined or compromised by including related New York Minimum Wage Act claims.  Nor will Defendant's claims, defenses, or proofs vary significantly.

*Id.* at 90.

In light of the foregoing precedent and the identical issues presented by the federal and state claims in this case, this Court should exercise supplemental jurisdiction over the state law claims.  Moreover, similar claims have regularly been tried together by courts in this district. *See, e.g. Heng Chan v. Triple 8 Palace, Inc.,* 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. 2006); *Chung v. New Silver Palace Restaurants, Inc.,* 272 F. Supp. 2d 314 (S.D.N.Y. 2003).

## II.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE CERTIFIED FOR CLASS TREATMENT PURSUANT TO RULE 23

Rule 23 provides that a court should certify a class where, as here, plaintiffs satisfy the four prerequisites of Rule 23(a) and one of the three prerequisites of Rule 23(b).  *See In Re*

*Initial Pub. Offering Sec. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006) ("A district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").  In addition, Rule 23(a) implicitly requires that putative class members be identifiable and ascertainable.  *Jankowski v. Castaldi,* 2006 U.S. Dist. LEXIS 4237, at *4 (E.D.N.Y. 2006).  The record here satisfies the prerequisites for Rule 23 class certification.

The elements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt a standard of flexibility," *Marisol A. v. Guiliani,* 126 F.3d 372, 376 (2d Cir. 1997), and "are encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall purpose."  *Niemiec v. Ann Bendick Realty,* 2007 U.S. Dist. LEXIS 98840, at *16 (E.D.N.Y. 2007) (internal quotation omitted).  "These purposes include the protection of small claims through aggregation and promoting judicial economy."  *Id.* (citation omitted).  In addition, "it is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Id.* at *16-17 (citation omitted).

As the Second Circuit stated, "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."  *Green v. Wolf Corp.,* 406 F. 2d 291, 298 (2d Cir. 1968).  In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims."  *Lee v.  ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006).

"Courts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together."  *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) (certifying class).  The Second Circuit has

found that "Rule 23 is [to be] given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A., 126 F. 3d at 377; see also Jankowski,* 2006 U.S. Dist. LEXIS 4237, \*4.  Indeed, "'courts should resolve all doubts about whether a class should be created in favor of certification.'"  *In re Magnetic Audiotape Antitrust Litigation,* 2001 U.S. Dist. LEXIS 7303, \*5 (S.D.N.Y. 2001) (quoting *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 378 (S.D.N.Y. 1996)).

### III.   PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER FEDERAL RULE 23(a)

Plaintiffs moving for class certification pursuant to Rule 23 must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common issues of law and fact; (3) the claims of the representative parties are typical of the class; and (4) the representative plaintiffs will fairly and adequately protect the class' interests.  Rule 23(a).

Here, the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the class' interests.

### A.  Class Members Are Sufficiently Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable."  In making this determination, courts should consider, *inter alia,* the "judicial economy arising from the avoidance of a multiplicity of actions," and "the ability of claimants to institute individual suits."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

A presumption that joinder is impracticable arises where the prospective class consists of forty members or more.  *Id.*; *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. 2007).  Here, more than forty individuals have filed Consents to Sue to join the federal

case and hundreds of additional Class Members have worked for Uncle Jack's during the time period relevant to this action. In just the three years prior to the filing of this lawsuit, at least 250 people worked as Tipped Employees in the three Uncle Jack's restaurants. Accordingly, it is reasonable to assume that no less than 300 tipped employees are in the putative class.[48] Accordingly, the Class Members are sufficiently numerous to warrant class certification. *See, e.g., Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *Hirschfeld v. Stone,* 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (finding numerosity where plaintiffs estimated 150 to 170 class members); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 89 (S.D.N.Y. 1989) (noting one hundred forty-two members are "clearly sufficient" to satisfy the numerosity requirement). The prospective class is also identifiable and ascertainable, as Uncle Jack's records make it "administratively feasible for a court to determine whether a particular individual is a member of the class." *In re Fosamax Prods. Liab. Litig.,* 248 F.R.D. 389, 395 (S.D.N.Y. 2008) (citation omitted).

Beyond the raw numbers, Rule 23 looks to whether "joinder of all members is impracticable." In order to satisfy this requirement, joinder need not be impossible, but instead it can be rather "difficult or inconvenien[t]." *In re Indep. Energy,* 210 F.R.D. 476, 479 (S.D.N.Y. 2002). The Second Circuit has cautioned that impracticability does not mean impossibility:

> Relevant considerations include judicial economy arising from the avoidance of multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

*Robidoux,* 987 F. 2d at 936 (citations omitted).

Here, joinder of all members of the class is impracticable. Some potential plaintiffs may reside outside New York, while others may not have been able to join the FLSA lawsuit because

---

[48] Rooney Aff., ¶ 23.

of the shorter statute of limitations period under federal law but should still be entitled to pursue their claims with other Uncle Jack's employees.  Furthermore, joinder of all members of the class is unlikely given that some Class Members, especially employees such as runners and bussers, are economically disadvantaged, which would make individual suits difficult to pursue. The costs of maintaining separate actions would be prohibitive for these potential class members, and obtaining individual counsel may prove difficult because of the relatively small damages.

Finally, in defining "impracticability," courts have noted "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Adames,* 133 F.R.D. at 89.  Uncle Jack's' record of harassment, intimidation and retaliation provides an additional reason why a class action is appropriate, because some current employees may be intimidated and may not exercise their right to join the lawsuit otherwise.

### B.  Class Members Share Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact."  *Marisol A.,* 126 F.3d at 376.  "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992); *see also Velez v. Majik Cleaning Serv.,* 2005 U.S. Dist. LEXIS 709, at *9 (S.D.N.Y. 2005) (citations omitted) ("[a] single common question may be sufficient to satisfy the commonality requirement.").  Here, the common unifying threads which exists as to the Rule 23 Class include, *inter alia,* the following questions of law and fact:

1.  whether Uncle Jack's failed to pay members of the Rule 23 Class the applicable minimum wage under New York law;

2.  whether Uncle Jack's timekeeping practices violated New York law;

16

3.   whether Uncle Jack's unlawfully misappropriated tips from members of the Rule 23 Class;

4.   whether Uncle Jack's failure to pay Class Members overtime wages was instituted willfully or with reckless disregard of the law;

5.   whether Uncle Jack's failed to provide spread of hours pay to Class Members in violation of New York law;

6.   whether Uncle Jack's failed to provide uniform cleaning allowances in violation of New York law;

7.   whether the Defendants comprise a "single employer" or joint employer of the Class Members within the meaning of New York law; and

8.   the measure of damages for each member of the Rule 23 Class.

There are no differences amongst the Rule 23 Class Members which would serve to defeat commonality.   Each Class Member participated in a tip pool and all were subjected to Uncle Jack's scheme to deprive them of their rightful tips and other wages.   As such, the common issues present in this case are all amenable to common proof.   Furthermore, any differences among the Class Members, such as the amount of tips owed, primarily affect the amount of damages, not liability.   *See, e.g., Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F. Supp. 1131, 1147 (E.D.N.Y. 1996) ("It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit") (internal quotations omitted); *see also Ansoumana,* 201 F.R.D. at 86 (*"*differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled," not the amenability of Plaintiffs' claims to Rule 23 certification).

17

As the practices and policies complained of in this lawsuit were applied across the board to each and every Rule 23 Class Member, the requirement of commonality is satisfied. Here, Plaintiffs have incontrovertibly shown that they and the other Class Members were not paid for all of the hours they worked, including overtime hours. In light of Defendants' timekeeping practices, all Class Members will similarly benefit from the shifting burden of proof with respect to proper payment for hours worked under New York Law. N.Y. Labor Law § 196-a.

Moreover, each Class Member will rely upon the exact same legal arguments with respect to Uncle Jack's liability for the misappropriation of tips, and if Plaintiffs succeed, then every single Class Member is entitled to a portion of those tips. Significant elements of proof common to all Class Members do not require individualized examination. The Complaint raises the same claims on behalf of the proposed Class Members, and the Class Members would thus rely on the same wrongful conduct and legal arguments in any suit against Uncle Jack's.

### C. Plaintiffs' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical" of the class. The typicality requirement is met if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir. 2001) (internal quotation marks omitted). The typicality factor does not require an "identical" factual background for all class members, but only "that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs claim as to that of other members of the proposed class." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (citation and internal quotation marks omitted).

18

Further, the fact that Plaintiffs had different job titles is irrelevant in terms of the typicality requirement. *See Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 390 (W.D.N.Y. 2005) ("That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to [the named] plaintiff's claims. What is important is that these employees were allegedly subject to a common practice or scheme on [Defendants'] part.").

Here, the claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent, insofar as (1) they have all worked as captains, waiters, runners, bussers or bartenders at Uncle Jack's within the six years prior to the filing of the lawsuit; (2) they all enjoy the same statutory rights under New York law to be paid minimum and overtime wages, spread of hours premium pay, and to retain all the tips they earn; and (3) they have all sustained similar types of damages as a result of Uncle Jack's failure to comply with New York law. Accordingly, the claims of Plaintiffs are typical of the claims of the class.

### D.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires Plaintiffs to demonstrate that the proposed action will fairly and adequately protect the interests of the class. To satisfy this requirement, Plaintiffs must show (1) that there is an absence of conflict and antagonistic interests between them and the Class Members, and (2) that Plaintiffs' counsel is qualified to and capable of conducting the litigation. *Iglesias-Mendoza,* 239 F.R.D. at 373.

To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.,* 222 F. 3d 52, 60 (2d Cir. 2000). "[T]he fact

that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 2008 U.S. Dist. LEXIS 41650, *8 (S.D.N.Y. 2008).

Both the representative parties and their counsel will fairly and adequately protect the interests of the class.  In this case, "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class."  *Marisol A.,* 126 F.3d at 378.  Where, as here, the named Plaintiffs' claims are essentially identical to those of the rest of the class, there are no antagonistic interests that go to the subject matter of the suit.

Moreover, "class counsel is qualified, experienced and generally able to conduct the litigation."  *In re Drexel Burnham Lambert Group, Inc.,* 960 F. 2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted); *see* Rooney Affirmation (discussing relevant Fugazy and Rooney experience).  Counsel has experience in handling class actions, other complex litigation and claims of the type asserted in the action.  Counsel's knowledge of the applicable law and track record of committing considerable resources to represent the Plaintiffs shows that counsel is qualified to litigate the Class Members' claims.  *See, e.g., Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 346 (S.D.N.Y. 2004).

## IV.     PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER FEDERAL RULE 23(b)

Plaintiffs moving for class certification under Rule 23(b)(3), as here, must also establish that: (1) common issues of law and fact predominate over individual claims, and (2) that a class action is superior to other available means of adjudicating the action.  *Iglesias-Mendoz,* 239 F.R.D. at 370.  Here, Plaintiffs have easily met the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b)(3) is satisfied.  *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d

590, 598 (2d Cir. 1986) (satisfying Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."); *Trinidad v. Breakaway Courier Sys., Inc.,* 2007 U.S. Dist. LEXIS 2914, *22 (S.D.N.Y. 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a)].").  Here, class certification is appropriate under Rule 23(b)(3) because common questions of law or fact "predominate over any questions affecting only individual members" and a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### A.  Common Questions of Law and Fact Predominate

To meet the predominance requirement, a plaintiff must establish that "the issues that are subject to generalized proof, and thus applicable to the class as a whole... predominate over those issues that are subject only to individualized proof."  *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (internal citations omitted).

Here, common questions of liability clearly predominate over any individual inquiries; namely, whether Uncle Jack's pay practices violated the overtime, minimum wage, spread of hours and uniform cleaning allowance provisions of New York law.  *See Iglesias-Mendoza,* 239 F.R.D. at 373 ("these are about the most perfect questions for class treatment.").

Plaintiffs here are challenging certain Uncle Jack's policies and practices which have been applied in a more or less uniform fashion to Uncle Jack's employees.  Accordingly, these issues "are subject to generalized proof, and thus applicable to the class as a whole," and they "predominate over those issues that are subject only to individualized proof."  *Rutstein*, 211 F.3d at 1233 (internal citations omitted).  Uncle Jack's' unlawful misappropriation of Class Members' gratuities and its failure to pay Class Members minimum wages, overtime wages, spread of hours

premium pay and a uniform cleaning allowance, all present issues that uniformly affect the class as a whole.  Indeed, if Plaintiffs can establish that Defendants were not entitled to take 3% of employees' credit card tips, or that the purported "service charge" is a gratuity under § 196-d and was not distributed in full to Class Members, they will establish class-wide liability.

The only individualized determinations in this case are questions of damages, i.e., to what extent each particular Class Member has been harmed by these uniform policies.  Accordingly, common questions of law and fact predominate.  *See Velez,* 2005 U.S. Dist. LEXIS 709, *4 ("whether Majik and the individual defendants breached their legal issues under the FLSA and New York Labor Law are issues that predominate in this case").  Here, "the liability issue is common to the class, [thus] common questions are held to predominate over individual questions."  *Bolanos v. Norwegian Cruise Line, Ltd.,* 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002). Moreover, Courts routinely find that common questions predominate in wage and hour actions brought by a class of employees of the same employer challenging allegedly illegal policies and practices.  *See, e.g., Damassia,* 250 F.R.D. at 161; *Iglesias-Mendoza,* 239 F.R.D. at 372-373.

**B.  Class Treatment Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Claims**

The second prong of Rule 23(b)(3) examines whether the class action device is superior to other methods available for a fair and efficient adjudication of the controversy.  Rule 23(b)(3) sets forth a non-exhaustive list of factors pertinent for judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims into a particular forum.

In an overtime case brought under both New York law and the FLSA, the "factual overlap between the federal claims and the state claims is virtually total," so it would "ill serve

the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices." *Guzman v. VLM, Inc*., 2008 U.S. Dist. LEXIS 15821, *9 (E.D.N.Y. 2008).  This Court, moreover, will find no particular difficulty in the management of the state law class. Liability issues will, in many cases, mirror the Court's analysis of Plaintiffs' FLSA representative claims, and the calculation of damages will be based largely on records Defendants were required to keep under federal and state labor laws.  *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; NYCRR § 142-2.6.

Here, Plaintiffs' proposed class is maintainable under Rule 23(b)(3).  No class members have brought individual actions.  It is desirable to concentrate the litigation in one forum because individual litigation costs would likely exceed any gains from wage recovery.  Moreover, individual plaintiffs in this case lack the financial resources to conduct on their own a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Uncle Jack's to recover such damages.  Therefore, this class action is superior to other available methods for the fair and efficient adjudication of this litigation.

In addition, the proposed Class Members include many low-wage workers with limited resources and little familiarity with the legal system.  It is, therefore, "extremely unlikely that they would pursue separate actions." *Iglesias-Mendoza*, 239 F.R.D. at 373; *see also McBean v. City of New York*, 228 F.R.D. 487, 503 (S.D.N.Y. 2005) ("[A]ssumed socioeconomic status of the proposed class members. . .argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claims.").

Perhaps more importantly, a situation of possible intimidation exists in this case because some Class Members are still employees of Defendants and may fear reprisal and would not be inclined to pursue individual claims.   Indeed, a class action is the superior method of

adjudication where "class members may fear reprisal and would not be inclined to pursue individual claims." *Torres v. Gristede's Operating Corp.,* 2006 U.S. Dist. LEXIS 74039, at *53-54. Fairness also weighs in favor of supplemental jurisdiction, to the extent that employees may feel intimidated about volunteering to participate in an opt-in collective action. The use of a common forum here is an appropriate use of the Court's resources and allows this Court to be flexible in accommodating Plaintiffs' FLSA claims with state law claims. Thus, this class should be certified under Rule 23(b)(3).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion to certify this case as a class action.

Dated: New York, New York
       January 10, 2011

Respectfully submitted,

FUGAZY & ROONEY LLP

_____/S/_____
Paul P. Rooney (PR-0333)
Amanda M. Fugazy (AF-6772)
225 Broadway, 39th Floor
New York, New York 10007
(212) 346-0570
*Attorneys for Plaintiffs, collective action members, and putative class members*