UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
JUAN ALONSON, ABELARDO ARIAS,
JAIME LOPEZ, RON MENIN,
LUIS NARANJO, HECTOR OLVERA,
PEDRO ORTIZ, LEONARDO PRIETO,
ARKADY SHYTENBERG, VICTOR SOLIS,          CIVIL ACTION NO. :
ALEJANDRO TORRES, LUIS XURUC,              08-7813 (DAB)
and IVAN ZAPATA, on behalf of themselves
and all others similarly situated,

                  Plaintiffs,
          -against-

UNCLE JACK'S STEAKHOUSE, INC., et.al.

                  Defendants.
-------------------------------------------------------------


MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT


Jesse C. Rose (JR-2409)
VALLI KANE & VAGNINI LLP
600 Old Country Road
Suite 519
Garden City, NY 11530
*Attorneys for Defendant Uncle
Jack's Steakhouse Corporation*

## TABLE OF CONTENTS

Table of Contents ...................................................................................................... i

Table of Authorities..................................................................................................iii

PRELIMINARY STATEMENT................................................................................ 1

RESPONSE TO PLAINTIFFS' PRELIMINARY STATEMENT ................................ 1

RESPONSE TO PLAINTIFFS' SUMMARY OF FACTS .......................................... 1

    A.   There was no interrelation of operations ......................................... 1

    B.   There was no misappropriation of tips.............................................. 3

    C.   Defendants did not violate the overtime law ................................... 4

    D.   Plaintiffs did not violate spread-of-hours regulations or uniform allowance requirements............................................................................................ 5

    E.   Employees claiming not to have received a cash wage ...................... 6

DEFENDANTS' ADDITIONAL STATEMENTS OF FACT ....................................... 6

ARGUMENT ........................................................................................................... 8

    I.   Legal Standards for Summary Judgment ........................................... 8

    II.   Plaintiffs are not entitled to summary judgment on claims of failure to pay the minimum wage ........................................................................... 9

        A.  Plaintiffs raise this claim for the first time in their motion........................... 9

        B.  Plaintiffs have not established that the credit card reduction violates the FLSA or NYLL......................................................................................................... 10

        C.  Plaintiffs have not established that Defendants' policies relating to contract parties violated the law .............................................................................. 11

            a.   *The tip-pool was properly structured*............................................. 11

            b.   *The amount received from contract parties for a service charge was not a gratuity*................................................................................. 13

    III.   Plaintiffs have not established entitlement to summary judgment on their overtime claims........................................................................... 14

IV.   Plaintiffs have not established that Defendants violated NYLL § 196-d .......................... 15

V.    Plaintiffs have not established entitlement to summary judgment on
      their spread of hours claims ........................................................................ 16

VI.   Plaintiffs have not established entitlement to summary judgment on
      their claims for uniform cleaning allowances ................................................ 17

VII.  Plaintiffs have not established that Defendants are a "single employer" ......................... 18

VIII. Plaintiffs have not established that the individual Defendants are "employers" .............. 19

IX.   Plaintiffs have not established claims on behalf of the five individuals
      who allegedly did not receive a "cash wage" ................................................. 21

CONCLUSION ............................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

Almeida v. Aguinaga, 500 F. Supp. 2d 366 (S.D.N.Y. 2007) ........................................................ 16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 8

Arculeo v. On-Site Sales & Mktg., L.L.C., 425 F.3d 193 (2d Cir. 2005) ...................................... 18

Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360 (S.D. Fla. 2009) .............................................. 10

Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677 (D. Conn. 2008) ...................................... 8

Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir. 1984) .............................................. 20

Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y.  2006) .................... 12, 16

Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220 (S.D.N.Y. 2002) .................. 11

Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235 (2d Cir. 1995) .............................................. 18

Espinosa v. Delgado Travel Agency, 2007 U.S. Dist. LEXIS 15149 (S.D.N.Y.  2007) ............... 16

Franklin v. Breton Int'l, Inc., 2006 U.S. Dist. LEXIS 88893 (S.D.N.Y.  2006) ............................ 16

Garcia v. La Revise Assocs. LLC, 2011 U.S. Dist. LEXIS 3325 (S.D.N.Y. 2011) ...........11, 12, 17

Gayle v. Harry's Nurses Registry, Inc., 2009 U.S. Dist. LEXIS 17768 (E.D.N.Y.  2009) ........... 20

Genao v. Blessed Sacrament Sch., 2009 U.S. Dist. LEXIS 95787 (E.D.N.Y. 2009) ...................... 9

Gillis v. Twenty Three E. Adams St. Corp., 2006 U.S. Dist. LEXIS 12994 (N.D. Ill. 2006) ....... 10

Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706 (S.D.N.Y. 2007) ...................... 11

Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y.  2007) ................. 22

Herman v. RSR Sec. Servs., 172 F.3d 132 (2d Cir. 1999) ............................................................ 20

In re Dana Corp., 574 F.3d 129 (2d Cir. 2009) .............................................................................. 8

Jian Zhong v. August August Corp., 498 F. Supp. 2d 625 (S.D.N.Y. 2007) ................................ 21

Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir. 1998) ............................ 11

Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000)........................................................................... 21

Lihli Fashions Corp. v. NLRB, 80 F.3d 743 (2d Cir. 1996)...................................................... 18, 19

Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241 (3d Cir. 1991) ........................ 18

Mastrandrea v. Nassau Land Improvement Co., 1999 U.S. App. LEXIS 13959 (2d Cir. 1999) .. 19

Myers v. Copper Cellar Corp., 192 F.3d 546 (6th Cir. 1999) ........................................... 10

NLRB v. Al Bryant, Inc., 711 F.2d 543 (3d Cir. 1983), cert. denied,
    464 U.S. 1039, 79 L. Ed. 2d 165, 104 S. Ct. 699 (1984) ......................................... 18

Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980) ............................... 9

Seenaraine v. Securitas Sec. Servs. USA, Inc., 37 A.D.3d 700, 830 N.Y.S.2d 728
    (2nd Dept.  2007) ................................................................................ 16

Torres v. Gristede's Operating Corp., 628 F.Supp.2d 447 (S.D.N.Y. Aug. 28, 2008) ..................... 8

**Statutes**

12 NYCRR § 137-1.8 ................................................................................. 17, 18

12 NYCRR § 137-2.1(a)(4) ........................................................................... 14

12 NYCRR § 137-3.13 ................................................................................ 17

29 C.F.R. § 516.2(a)(5) ............................................................................ 14

29 C.F.R. § 785.48 ................................................................................. 15

29 U.S.C. § 206(a)(1) .............................................................................. 22

Fed. R. Civ. P. 56(c) ............................................................................... 8

Fed. R. Civ. P. 8(a) ............................................................................... 21

New York Labor Law, § 196-d .................................................................11, 14, 15

**Other Authorities**

NY DOL Opinion Letter, RO-09-0181 (March 11, 2010) ................................................. 13

U.S. Dept. of Labor Field Operations Handbrook § 30d05(a) (June 30, 2000) ........................... 10

## PRELIMINARY STATEMENT

Defendants, Uncle Jack's Steakhouse, Inc., Uncle Jack's of Bayside, Inc., Uncle Jack's Steakhouse Midtown, Inc. ("Corporate Defendants"), William J. Degel ("Mr. Degel"), Thomas Carpenter ("Mr. Carpenter") and Uncle Jack's Steakhouse Franchise, Inc. herein respond to Plaintiffs' motion for summary judgment. Plaintiffs' motion for summary judgment is baseless as Plaintiffs have failed to establish by a preponderance of the evidence that there are no questions of fact for the fact finder to decide at trial as to any of the <u>eight</u> (8) requested findings.  Drawing all reasonable inferences from the evidence in favor of the non-moving party, as required on summary judgment, as well as considering the entirety of relevant case-law, this motion should be denied.

## RESPONSE TO PLAINTIFFS' PRELIMINARY STATEMENT

Plaintiffs include, in addition to a statement of facts, a preliminary statement containing numerous conclusions of fact and law without supportive citation or basis.  We would ask that these conclusory and baseless statements be disregarded as having no relevance or weight whatsoever. This section is especially unnecessary as Plaintiffs' statement of facts, alleging the same concepts with citations, immediately follows.

## RESPONSE TO PLAINTIFFS' SUMMARY OF FACTS

Plaintiffs' statement of facts asserts numerous allegations without any support other than vague or specific instances used to support broad conclusions.  Plaintiffs' statement of facts does not prove any fact by a preponderance of the evidence, choosing instead to make allegations without support and hope that their lacking foundation goes unnoticed.

A. <u>There was no interrelation of operations</u>

Plaintiffs attempt to conclude that Mr. Degel is in full control of all aspects for all three

1

restaurants. They do this by citing answer to specific questions that do not remotely support the assertion. Contrary to this assertion, Mr. Degel's duties were delineated during his deposition as trying to grow the company, finding other locations, marketing, advertising, signing checks, purchasing, quality control and ensuring cleanliness. Deposition of William Degel ("W.D."), attached as Exhibit A, pp. 15-16. Plaintiffs additionally attempt to make Mr. Carpenter seem to play a similar roll, contradicting his deposition testimony wherein his duties were limited to hiring and firing management, quality control, repairs, promotions, and marketing. Deposition of Thomas Carpenter ("T.C."), attached as Exhibit B, p. 8. Further, Mr. Borysowski worked as the head manager in a single location and did not run Uncle Jack's payroll, merely forwarding payroll information to a payroll company. Deposition of Dennis Borysowski ("D.B."), attached as Exhibit C, pp. 8, 12.

Plaintiffs assert that Mr. Degel and Mr. Carpenter "dictate, control and ratify uniform personnel policies and procedures that are applied equally to Tipped Employees in all three restaurants," however this is not supported by any facts in the record. Def. Memo, pp. 4-5. The evidence cited by Plaintiffs merely indicates that there were policies to terminate employees who were violent in the work place or, in some circumstances, employees could be terminated if they failed to come to work for a scheduled shift without notification. T.C., pp. 130-31. Plaintiffs additionally conclude that the Corporate Defendants "share an interrelation of operations," citing nothing more than testimony that a single health plan was used for the restaurants and that, on occasion, an employee would be asked to cover a shift for another. Def. Memo, p. 5. In addition to this testimony not being supported by the cited material, it is contradicted by other facts. These stores carry the Uncle Jack's Steakhouse name but employ separate employee groups, have their own workers compensation policies, have different management and deal with a

plethora of varying circumstances associated with doing business in New York City. Deposition of Uncle Jack's Steakhouse Midtown Incorporated ("U.J. Mid."), attached as Exhibit D, pp. 7-8; Ex. E, Worker's Compensation Agreements.

B. <u>There was no misappropriation of tips</u>

While Uncle Jack's restaurants did entertain large groups of people on a regular basis, they did not include a twenty-five percent gratuity on these parties. W.D., p. 59. Rather, only if a party was signed to a contract which typically included a set menu, changes to ambience, entertainment and use of a special banquet room was a twenty-five percent service charge included on a written and executed contract. W.D., p. 59. These "contract parties" required a liaison to ensure compliance with their individual circumstances and advanced preparation by management and the party planner when one was employed. W.D., pp. 189-90. In exchange for these extended roles, requiring the restaurants' management to perform numerous extra tasks in preparation for and during the event, they were provided with a portion of the service charge as a type of commission. W.D., pp. 23-24, 189-90; D.B., p. 24. At all times these parties were told prior to and leading up to the event that the charge was a "service charge" as was listed on the signed contracts. W.D., pp. 65-66. Further, and contrary to Plaintiffs' assertions, if the amount of the service charge was intended as a gratuity then it would have been in the same amount as for large parties, and not the increased service charge which was meant to compensate the other individuals who worked to help prepare for and execute these parties. W.D., p. 59.

Plaintiffs assert that Uncle Jack's did not provide them evidence of credit card fees. However, Defendants did provide a letter from the accountants who maintain such information stating that the amount charged for fees, during a specific period, was approximately 3%, excluding charge-backs and other capital requirements for operating the credit card processing

machines. Ex. F, Letter from Psyllos and Psyllos.   As the accountants maintain the documentation for these figures, Plaintiffs should have sought discovery from those individuals and cannot now claim some type of unfounded inference to support a request for summary judgment.   Contrary to Plaintiffs' statements, no complaints were ever made to Defendants regarding any of these issues prior to the filing of a federal lawsuit. W.D., pp. 204-05.

   C.   <u>Defendants did not violate the overtime law</u>

   Plaintiffs' statements that no employee was ever paid overtime are directly contradicted by testimony. W.D., p. 99.  Further, Plaintiffs' allege that "Uncle Jack's manipulated Plaintiffs' time records by shaving off time to make it appear that none of the Plaintiffs worked overtime," citing solely to a portion of testimony that does not remotely address the issue aside from a question posed by Plaintiffs' attorney which was answered in part by Mr. Carpenter with the statement "I don't know what to deduce." Def. Memo, p. 7 n. 27; T.C., 120-21.  Rather, the record is quite clear that Plaintiffs were not scheduled for overtime and that the clock-in and clock-out records regularly had to be edited due to the Plaintiffs' admitted failure to properly record their time using the systems provided.  T.C., pp. 85, 134-38; Aff. of Paul Leventhall ("P.L. Aff."), attached as Exhibit G, ¶ 3, 4; Aff. of Jorge Prieto ("J.P. Aff."), attached as Exhibit H, ¶ 3, 4; Aff. of Jeffrey Kleinman ("J.K. Aff."), attached as Exhibit I, ¶ 3, 4; Aff. of Rufino De La Cruz ("R.C. Aff."), attached as Exhibit J, ¶ 3, 4; Aff. of Angel Sinchi ("A.S. Aff."), attached as Exhibit K, ¶ 3, 4; Aff. of Tom O'Connor ("T.O. Aff."), attached as Exhibit L; ¶ 3, 4; Aff. of Julio Ganzhi ("J.G. Aff."), attached as Exhibit M, ¶ 3, 4; Aff. of David Gadlin ("D.G. Aff."), attached as Exhibit N, ¶ 4, 5; Aff. of Marco Tucuri ("M.T. Aff."), attached as Exhibit O, ¶ 3, 4; Aff. of Robert Higgins ("R.H. Aff."), attached as Exhibit P, ¶ 3, 4; Aff. of Robert Bastedo ("R.B. Aff."), attached as Exhibit Q; ¶ 3, 4; Aff. of Kevin Sullivan ("K.S. Aff."), attached as Exhibit R, ¶ 3, 4;

Aff. of Geovenny Vgalle ("G.V. Aff."), attached as Exhibit S, ¶ 3, 4; Deposition of William Corcoran ("W.C."), attached as Exhibit T, pp. 78-91 (Mr. Corcoran admitted that the records were not accurate due to his own failure to clock in and out at the proper times); Deposition of Robert Morano ("R.M."), attached as Exhibit U, pp. 24-37 (Mr. Morrano clocked in early for almost every shift, regardless of when he was scheduled to work); Deposition of Michael Overton ("M.O."), attached as Exhibit V, pp. 119-133 (Mr. Overton's time sheets were disputably inaccurate); Deposition of Abelardo Arias ("A.A."), attached as Exhibit W, pp. 67-71 (Mr. Arias often did not clock out between shifts if working a double).

Further, Plaintiffs contradict themselves by stating that there are "innumerable" instances of overtime violations, while they then state that for a period of over a year they could find only a scant number of examples of overtime. Def. Memo, p. 8. These "examples" are from the raw data, including numerous instances where employees failed to clock-in at the proper time, clocked-out late, did not clock-out for breaks or forgot to clock-out at all. Even if their assertions are correct, there is still a question of fact as to whether the time is accurate due to circumstances already described.

D. <u>Plaintiffs did not violate spread-of-hours regulations or uniform allowance requirements</u>

In their factual section, Plaintiffs do not address relevant issues to the regulations relating to uniform allowances and spread-of-hours regulations. Primarily, they forget that all Plaintiffs, Opt-ins and other employees made well above the minimum wage. Deposition of Jeffrey Greenberg ("J.G."), attached as Exhibit X, pp. 70 (Mr. Greenberg made between fifteen and twenty dollars per hour in tips); R.M, p. 23 (Mr. Marrano worked thirty five hours per week and made between four hundred and a thousand dollars a week); Deposition of Victor Rivera ("V.R."), attached as Exhibit Y, pp. 39-40 (Mr. Rivera made "substantially more" than the

minimum wage with his tips); P.L. Aff., ¶ 2; J.P. Aff., ¶ 2; J.K. Aff., ¶ 2; R.C. Aff., ¶ 2; A.S. Aff., ¶ 2; T.O. Aff., ¶ 2; J.G. Aff., ¶ 2; D.G. Aff., ¶ 3; M.T. Aff., ¶ 2; R.H. Aff., ¶ 2; R.B. Aff., ¶ 2; K.S. Aff., ¶ 2; G.V. Aff., ¶ 2.   Additionally, the uniforms are of the type that they could be worn outside of work.  P.L. Aff., ¶ 5; J.P. Aff., ¶ 5; J.K. Aff., ¶ 5; R.C. Aff., ¶ 5; A.S. Aff., ¶ 5; T.O. Aff., ¶ 5; J.G. Aff., ¶ 5; D.G. Aff., ¶ 6; M.T. Aff., ¶ 5; R.H. Aff., ¶ 5; R.B. Aff., ¶ 5; K.S. Aff., ¶ 5; G.V. Aff., ¶ 5.  Due to these two facts, Plaintiffs were not entitled to such payments.

     E.   <u>Employees claiming not to have received a cash wage</u>

For three of the individuals included in Plaintiffs' motion, this is the first time that Defendants are hearing of any alleged claim for failure to pay a cash wage.  Further, the only support for these claims are Plaintiffs' own answers to interrogatories and an exhibit comprised entirely of documents which are the subject of pre-motion request currently pending before Judge Batts as they were provided after the close of discovery under circumstances which do not indicate trustworthiness.

## DEFENDANTS' ADDITIONAL STATEMENTS OF FACT

Defendants are three small restaurants, an employee of these restaurants who no longer is employed by any of the Defendant Corporations, an employee who assists in the management of the stores, and the majority owner of these restaurants.  The facts relating to this case stem from assertions made by Plaintiffs after they were brought to their attorney by a former employee whose employment ended badly, Ira Mandel, who also provided thousands of documents to Plaintiffs after the close of discovery which he allegedly took from the restaurant he was employed in after his employment ended badly. Def. Ex. 18, un-notarized affirmation of non-attorney Ira Mandel; Affidavit of William Degel ("Aff. of W.D."), attached as Exhibit Z.  The claims attempt to couch the regular operation of every restaurant and the intricacies involved as a

vast conspiracy to steal small amounts of money from employees who earn far in excess of the minimum wage. J.G., pp. 70; R.M, p. 23; V.R., pp. 39-40; P.L. Aff., ¶ 2; J.P. Aff., ¶ 2; J.K. Aff., ¶ 2; R.C. Aff., ¶ 2; A.S. Aff., ¶ 2; T.O. Aff., ¶ 2; J.G. Aff., ¶ 2; D.G. Aff., ¶ 3; M.T. Aff., ¶ 2; R.H. Aff., ¶ 2; R.B. Aff., ¶ 2; K.S. Aff., ¶ 2; G.V. Aff., ¶ 2.

While the Plaintiffs in this matter state that they complained to management about these issues, this was simply not the case. W.D., pp. 162-63, 204-05; R.M., p. 19.  In fact, Defendants had no idea that anyone was considering any action against the restaurants until they were served with the Complaint. W.D., pp. 204-05.  Defendants at all times acted reasonably and based on their understanding of what was occurring in the restaurant, creating and enforcing policies which were meant to provide employees with additional money and keep them happy as this was beneficial to the restaurants. W.D., pp. 57-59.

Uncle Jack's had a strict policy against scheduling overtime and allowing employees to work overtime. W.D., pp. 104-05 ("Because our standard is not to schedule more than 40 … It's beneficial to me to have more staff members working for me.") ; R.M., p. 23; J.G., pp. 53-54; P.L. Aff., ¶ 3; J.P. Aff., ¶ 3; J.K. Aff., ¶ 3; R.C. Aff., ¶ 3; A.S. Aff., ¶ 3; T.O. Aff., ¶ 3; J.G. Aff., ¶ 3; D.G. Aff., ¶ 4; M.T. Aff., ¶ 3; R.H. Aff., ¶ 3; R.B. Aff., ¶ 3; K.S. Aff., ¶ 3; G.V. Aff., ¶ 3.

Defendants do not maintain records relating to payments to credit card companies as these are maintained by their accountants. W.D., pp. 141-45.  Further, many records of daily clock-in and clock-out times were lost or unrecoverable from Defendants' computer systems. W.D.,p. 138.  Despite numerous attempts to recover this information, Defendants were not successful. Id.  Records of daily clock-in and clock-out times are maintained in the regular course of business, however Defendants' expertise in computers is limited. These computers were made available to Plaintiffs for inspection, however they chose not to inspect them using

their own expert. Aff. of J.R., ¶ 2.

## **ARGUMENT**

### I.    **Legal Standards for Summary Judgment**

Summary judgment is only available when "there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The

function of the district court in considering the motion for summary judgment is not to resolve

disputed questions of fact but <u>only</u> to determine whether, as to any material issue, a genuine

factual dispute exists." <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. July 31, 2009) (emphasis

added).  "[W]hen the party against whom summary judgment is sought comes forth with

affidavits or other material obtained through discovery that generates uncertainty as to the true

state of <u>any</u> material fact, the procedural weapon of summary judgment is inappropriate." <u>Id.</u>

(emphasis added) (citation omitted).

"The Court must view all inferences and ambiguities in a light most favorable to the

nonmoving party." <u>Asp v. Milardo Photography, Inc.</u>, 573 F. Supp. 2d 677, 684 (D. Conn. 2008).

"Only when reasonable minds could not differ as to the import of the evidence is summary

judgment proper." <u>Id.</u> (citations and quotations omitted).  A genuine issue of material fact exists

if "a reasonable jury could return a verdict for the nonmoving party." <u>Torres v. Gristede's</u>

<u>Operating Corp.</u>, 628 F.Supp.2d 447, 454 (S.D.N.Y. Aug. 28, 2008) (quoting <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The moving party

bears the burden of showing that a reasonable jury could not find for the nonmoving party.  *See*

<u>id.</u>  "The Court resolves all ambiguities and draws all factual inferences in favor of the

nonmovant. *See* <u>id.</u> (citing Fed. R. Civ. P. 56(c)).

A party resisting a motion for summary judgment "must be afforded 'a reasonable

opportunity to elicit information within the control of his adversaries.'" In re Dana Corp., 574 F.3d at 149 (emphasis added) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)).  Moreover, "summary judgment should not be granted against non-dilatory party who has been 'denied reasonable access to potentially favorable information.'" Id. (quoting Quinn, 613 F.2d at 445).

## II. **Plaintiffs are not entitled to summary judgment on claims of failure to pay the minimum wage**

Plaintiffs are not entitled to judgment as a matter of law for their claims of minimum wage violations.  They fail to establish facts by a preponderance of the evidence and further rely on conclusions rather than proof.  Further, these claims were not included in Plaintiffs' Amended Complaint.

### A.  Plaintiffs raise this claim for the first time in their motion

This marks the first time that Plaintiffs have asserted a claim for minimum wage due to a tip credit violation.  The Amended Complaint alleges that gratuities were unlawfully taken, but the only damages requested within the Wherefore clause, which specifically addresses this issue, solely requests relief by means of "(1) the unlawfully taken gratuities; (2) attorneys' fees and disbursements; (3) costs; and (4) pre-judgment and post-judgment interest at the prevailing rate." A.C., ¶ H.  At no point within the Complaint do Plaintiffs request or allege that they are entitled to the difference between the tip-credit minimum wage and the regular minimum wage.  As such, this claim should be rejected as being newly asserted at the Summary Judgment stage and thus not part of this lawsuit. See Genao v. Blessed Sacrament Sch., 2009 U.S. Dist. LEXIS 95787, *21 n. 10 (E.D.N.Y. Sept. 30, 2009) (not awarding damages for spread of hour violations because "plaintiff has not requested spread of hours wages in his Complaint.").  This new claim requires an entirely different set of proofs than what was pled in the Amended Complaint.

B.  Plaintiffs have not established that the credit card reduction violates the FLSA or NYLL

Plaintiffs argue that Plaintiffs provided "no evidence of what their credit card interchange fees were," ignoring the evidence produced by Defendants. Def. Memo, p. 12.   Defendants produced a letter which specifically stated that a calculation during the relevant period provided that the credit card exchange fees were about 3% of the money processed, which does not purport to account for charge backs and equipment purchases necessary to utilize credit cards, a consistent and necessary part of the business. Exhibit F.  Defendants' accountants, Psyllos & Psyllos, CPAS were not subpoenaed to our knowledge and neither were the credit card companies.  It is still Plaintiffs' burden to establish that the law was violated and they have attempted to do so by ignoring the documents produced in discovery, thus obviating their request for summary judgment.

The U.S. Department of Labor Operations Handbook provides that an employer may deduct the amount of credit card fees from the amount of tips that an employee receives. U.S. Dept. of Labor Field Operations Handbrook § 30d05(a) (June 30, 2000)[1].  Further, the same manual provides that where tips are not eventually collected from the credit card company, those tips are not required to be paid. Id. § 30d05(c).  This has been confirmed in other circuits. See e.g., Myers v. Copper Cellar Corp., 192 F.3d 546, 554 (6th Cir. 1999); Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1371 (S.D. Fla. 2009); Gillis v. Twenty Three E. Adams St. Corp., 2006 U.S. Dist. LEXIS 12994, *6 (N.D. Ill. 2006).  The New York Department of Labor has also issued an opinion letter stating the exact same interpretation of NYLL § 196-d. NY DOL Opinion Letter, RO-09-0164 (March 11, 2010)[2].   Here, Defendants provided information from their

---

[1] Available at http://www.dol.gov/whd/FOH/FOH_Ch30.pdf
[2] Available at http://www.labor.ny.gov/sites/legal/counsel/pdf/Tips%20(Sec.%20196-d)/RO-09-

accountant showing justification for the 3% credit card interchange fee retention.   Plaintiffs argue that Defendants have the burden to disprove Plaintiffs' summary judgment motion by default, rather than carrying their own burden.   Inferring all facts in Defendants' favor, it is clear that summary judgment must be denied.

### C.   Plaintiffs have not established that Defendants' policies relating to contract parties violated the law

Plaintiffs solely assert an argument as to contract party gratuities under the New York Labor Law, § 196-d.   They do so without remotely establishing entitlement to judgment as a matter of law.   Defendants did not violate the law for two reasons: (1) the individuals included in the tip-pool are individuals who are typically tipped; and, (2) the amount received was always treated as a service charge, not a gratuity.

#### a.   The tip-pool was properly structured

Plaintiffs claim that by charging parties who contracted beforehand to use Defendants' facilities.   Plaintiffs make no effort to factually address, instead assuming that they prevail under the FLSA's standard which requires that the individuals in a tip-pool be of the type who "customarily and regularly" get tipped for their services. Garcia v. La Revise Assocs. LLC, 2011 U.S. Dist. LEXIS 3325, *19 (S.D.N.Y. Jan. 13, 2011) (citing Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 228-30 (S.D.N.Y. 2002)).   This standard is met if the employee "is 'part of an occupation that customarily and regularly receives tips,' or whether they have more than 'de minimis' interaction with customers as a part of their employment." Id. at *15-16 (citing Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 301 (6th Cir. 1998); Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706. 712 (S.D.N.Y. 2007); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749, at *

0164.pdf

14, n.22 (S.D.N.Y. 2006)).

In <u>Garcia</u>, the plaintiffs claimed that by permitting the banquet coordinator to share in tips from contracted parties the defendants had lost the tip credit. <u>Id</u>. at *19.  Judge Swain concluded that summary judgment was appropriate against the plaintiffs' claims for the defendants' violation of the tip-credit because there was evidence that the banquet coordinators "had regular interactions with customers in connection with core Restaurant functions" by dealing "directly with private party hosts in advance of events for planning purposes and worked directly with the hosts and their guests during the events to ensure their satisfaction." <u>Id</u>. at *20.  "These duties constitute more than de minimis customer interaction." <u>Id</u>.

In the case at bar, the functions of a banquet coordinator were split between two sets of individuals: the managers of the restaurant and the party planners. Party planners were responsible for booking the parties and coordinating the events with the restaurants. D.B., p. 24; W.D., pp. 23-24.  Similarly, managers often helped plan and prepare for the parties. W.D., pp. 189-90; D.B., pp. 21-22, 24.  Once it began, managers dealt directly with the hosts of the event and their guests. D.B., pp. 24-27.  If not performing the work of wait staff, they were ensuring that the event went as planned and the satisfaction of everyone in attendance. <u>Id</u>.  In exchange for performance of these additional duties and the hard work that went into completing these contract parties, the party planner and the managers who attended the party received five percent each of the total check, which came directly from the service charge. W.D., pp. 189-90.  Because of this, Plaintiffs' motion must be denied on this point as there is at the very least a question of fact as to whether the individuals should have been included in the tip-pool for contract parties.

     b.  *The amount received from contract parties for a service charge was not a gratuity*

Plaintiffs argue that Defendants lost the tip-credit because the service charge included in the contract party contracts was actually a gratuity. They make this argument based on an extremely convoluted reading of the law that provides for the possibility of a service charge constituting a gratuity, but does not meet their burden of showing that in this instance there are no questions of fact as to whether it actually was in fact a gratuity. Further, if permitted, Defendants could establish that as a matter of law the service charge was not a gratuity and Plaintiffs' claims on this point should be dismissed.

The law is not especially clear on the issue of when a service charge should be considered a gratuity, however the department of labor has issued a letter to address the issue in circumstances where an 18% to 20% service charge is mandatory. NY DOL Opinion Letter, RO-09-0181 (March 11, 2010).[3] The New York Department of Labor opined that "[a]n employer may retain a portion of a service charge so long as the retention of that portion of the service charge is sufficiently disclosed so that the reasonable patron would be aware that not all of the service charge will be going to the service staff." Id. The letter does not address what a 25% service charge would lead a reasonable individual to believe, however, we can logically conclude that by increasing the service charge it would insinuate that the entirety of the charge does not go directly to wait staff.

Defendants' contracts included a 25% service charge. W.D., pp. 189-90. This amount is in excess of the 18% which is customarily charged to large parties and is listed on Uncle Jack's menu. W.D., p. 59.

Plaintiffs seemingly rely extensively on the labeling of gratuity on a check which is

---

[3] Available from http://www.labor.ny.gov/sites/legal/counsel/pdf/Tips%20(Sec.%2096-d)/RO-09-0181.pdf

13

signed by clients after paying for large parties.  This is not conclusive and is the result of programming which the computers utilize in generating the payment slip. Because Plaintiffs do not come close to establishing entitlement to judgment as a matter of law and, further, numerous questions of fact exist as to whether a violation of NYLL § 196-d occurred, Plaintiffs' motion should be denied.

III. **Plaintiffs have not established entitlement to summary judgment on their overtime claims**

Plaintiffs' request for judgment on this count is based on an illegitimate consideration of only the facts that support their claim, not mentioning or referring to the evidence that precludes them from obtaining judgment.  Plaintiffs also make numerous conclusions of fact which are entirely unsupported and conclude liability in their favor without adequate support.  Under the applicable laws, Defendants were required to maintain the records of the total hours worked in a given workweek and the daily times worked during that week. See 12 NYCRR § 137-2.1(a)(4); 29 C.F.R. § 516.2(a)(5).  Plaintiffs do not claim that Defendants did not maintain these records, as they were maintained and were used to create documents that show the total number of hours worked and compensated for all employees on a weekly basis.  Defendants were unable to obtain due to computer failures or for lack of ability to access the files in the drives.  Plaintiffs were made aware that they could have an expert attempt to get this information from the computers, but declined to do so. Aff. of J.R., ¶ 2.  Further, while some of the records which Defendants were able to obtain showed employees being clocked-in for in excess of forty hours, this was prior to the individual store managers reviewing this data and adjusting for employees who clocked in early, clocked out late, failed to clock out at all, had friends clock them in when they were not working, failed to clock out for breaks or otherwise did not properly utilize the computer used to clock employees in and out. D.B., pp. 117; T.C., pp. 134-38; W.C., pp. 78-91;

R.M., pp. 24-37; M.O., pp. 119-133; A.A., pp. 67-71. The records which Defendants maintain and produced demonstrate the amount of time worked after adjustments were made, on a store level, of these clock in and clock out times. See Ex. AA, sample of time records. Testimony of numerous individuals established that employees were not scheduled to work more than forty hours in a work week. W.D., pp. 104-05; R.M., p. 23; J.G., pp. 53-54; P.L. Aff., ¶ 3; J.P. Aff., ¶ 3; J.K. Aff., ¶ 3; R.C. Aff., ¶ 3; A.S. Aff., ¶ 3; T.O. Aff., ¶ 3; J.G. Aff., ¶ 3; D.G. Aff., ¶ 4; M.T. Aff., ¶ 3; R.H. Aff., ¶ 3; R.B. Aff., ¶ 3; K.S. Aff., ¶ 3; G.V. Aff., ¶ 3. Further, if they did, this often occurred due to their own failure to properly record their times. T.C., pp. 134-38; W.C, pp. 78-91; R.M., pp. 24-37; M.O., pp. 119-133; A.A., pp. 67-71. Defendants' practice of having the store managers make reasonable adjustments on a store level is legally acceptable and recommended by the Department of Labor. 29 C.F.R. § 785.48. As such, it is clear that at the very least there is a question of fact as to each and every claim for overtime and Defendants' weekly records, maintained in accordance with the law, contradict Plaintiffs' claims.

IV. **Plaintiffs have not established that Defendants violated NYLL § 196-d**

Plaintiffs reiterate their earlier argument in a section devoted to concluding that NYLL § 196-d was violated. Def. Memo, p. 19. Plaintiffs fail in even alleging a major element of this claim in that they do not show that the party planner or individual store manager constitute an employer under this law. As such, even in their conclusory fashion, they have failed to allege facts necessary to obtain a judgment on the merits. Further, and as established previously, the facts relating to these claims are in dispute and preclude a grant of summary judgment.

V. **Plaintiffs have not established entitlement to summary judgment on their spread of hours claims**

Plaintiffs have failed to establish that they are entitled to spread-of-hours pay as they have each received well in excess of the minimum wage in compensation for time worked. "[N]o group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law." Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007). Thus, employees are only entitled to the spread-of-hours pay if they received at or less than the minimum wage per hour worked. Id.; see also, (Espinosa v. Delgado Travel Agency, 2007 U.S. Dist. LEXIS 15149 at *7-8 (S.D.N.Y. 2007) ("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Franklin v. Breton Int'l, Inc., 2006 U.S. Dist. LEXIS 88893, at *13 (S.D.N.Y. 2006) (the spread-of-hours provision "applies only to workers earning the minimum wage"); Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780 at *76-77 (S.D.N.Y. 2006) ("The plain text of § 142.4 [sic] ensures an additional wage only 'in addition to the 'minimum wage' required under New York law. It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate."). Further, this interpretation has been supported by New York State Courts. See e.g., Seenaraine v. Securitas Sec. Servs. USA, Inc., 37 A.D.3d 700, 701-702, 830 N.Y.S.2d 728, 729 (2nd Dept. 2007).

Plaintiffs do not claim, nor can they justifiably, that they made the minimum wage. Far from it, they made well in excess of the $7.25 per hour that the law requires. J.G., p. 70; R.M., p. 23; V.R., pp. 39-40; P.L. Aff., ¶ 2; J.P. Aff., ¶ 2; J.K. Aff., ¶ 2; R.C. Aff., ¶ 2; A.S. Aff., ¶ 2; T.O.

Aff., ¶ 2; J.G. Aff., ¶ 2; D.G. Aff., ¶ 3; M.T. Aff., ¶ 2; R.H. Aff., ¶ 2; R.B. Aff., ¶ 2; K.S. Aff., ¶ 2; G.V. Aff., ¶ 2.. Because of this, they cannot now ask that this Court award them additional compensation under a statute that does not intend to include employees who exceed the minimum wage in their earnings. Further, each day that Plaintiffs claim to have worked over ten hours would be subject to the same adjustments to the time log as their overtime claims, creating an issue of fact as to whether the Plaintiffs actually worked more than ten hours in a day. *See supra.* As such, this issue is not ripe for summary judgment and Plaintiffs' motion should be denied.

### VI. **Plaintiffs have not established entitlement to summary judgment on their claims for uniform cleaning allowances**

Plaintiffs' conclusory statements of fact and law do not entitle them to judgment as a matter of law as to their claims for uniform allowance. Far from their conclusions, there are many questions of fact remaining and Plaintiffs are not legally entitled to reimbursement for uniform cleaning. The law provides that "an employer may not require employees to pay for the cost of cleaning and maintaining their own uniforms <u>if</u> those costs would reduce pay below the full statutory minimum wage." <u>Garcia v. La Revise Assocs. LLC</u>, 2011 U.S. Dist. LEXIS 3325, *18 (S.D.N.Y. Jan. 13, 2011) (citing 12 NYCRR § 137-1.8). As previously shown, Plaintiffs made far in excess of the minimum wage. As such, Plaintiffs are not entitled to judgment as a matter of law and this claim has no merit whatsoever.

Additionally, the law provides that there is no requirement to provide this reimbursement if the uniform consists of "clothing that may be worn as part of an employee's ordinary wardrobe." <u>Id</u>. (quoting 12 NYCRR § 137-3.13). While Plaintiffs have submitted affidavits to support their claim that Uncle Jack's uniforms would not be considered part of an employee's ordinary wardrobe, others testified that the clothing could be used as part of a regular wardrobe

and, as such, a question of fact exists as to whether the clothing actually consists of the type that requires reimbursement. P.L. Aff., ¶ 5; J.P. Aff., ¶ 5; J.K. Aff., ¶ 5; R.C. Aff., ¶ 5; A.S. Aff., ¶ 5; T.O. Aff., ¶ 5; J.G. Aff., ¶ 5; D.G. Aff., ¶ 6; M.T. Aff., ¶ 5; R.H. Aff., ¶ 5; R.B. Aff., ¶ 5; K.S. Aff., ¶ 5; G.V. Aff., ¶ 5.

Finally, Plaintiffs improperly cite to the law as providing for a $9.00 per week reimbursement for uniform cleaning. This is not a proper reading of the statute as that only applies to individuals who worked more than thirty hours in a given week. There is a sliding scale for reimbursement and, should Plaintiffs prevail despite the arguments provided herein, any award of damages should follow the amounts provided for by the statute. 12 NYCRR § 137-1.8(e).

### VII.   Plaintiffs have not established that Defendants are a "single employer"

Plaintiffs have not established that Defendant Corporations are in fact a single employer and further, Plaintiffs are incorrect in asserting that such a conclusion would make each entity jointly and severally liable for the debts of the other.   "The determinations of both single employer and alter ego status are questions of fact." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996) (citing NLRB v. Al Bryant, Inc., 711 F.2d 543, 551 (3d Cir. 1983), cert. denied, 464 U.S. 1039, 79 L. Ed. 2d 165, 104 S. Ct. 699 (1984); Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1258-59 (3d Cir. 1991)).   In the FLSA context this determination may be used to "impose liability for certain violations of employment law … on another entity comprising part of the single integrated employer." Arculeo v. On-Site Sales & Mktg., L.L.C., 425 F.3d 193, 198 (2d Cir. 2005) (citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-41 (2d Cir. 1995)). "In determining whether two companies are a single employer, courts examine the 'interrelation of operations, common management, centralized

18

control of labor relations and common ownership.'" <u>Mastrandrea v. Nassau Land Improvement Co.</u>, 1999 U.S. App. LEXIS 13959, *3-4 (2d Cir. 1999) (quoting <u>Lihli</u>, 80 F.3d at 747).

In <u>Mastrandrea</u>, the Second Circuit affirmed the decision not to consider two companies a single employer. <u>Id.</u> at *4-6. This decision was based on the lower court having found that although the businesses operated out of the same office, were owned by the same individuals and used the same accountant, they each had their own separate banking records, checkbooks, tax returns and performed different types of work. <u>Id.</u> at *5-6.

In the case at bar, each corporation maintains its own accounts, pays employees separately, employs separate management, has a separate location, is individually incorporated, does not share all aspects of ownership, and engage in different business strategies as necessary at the different locations. W.D., pp. 16, 30-32, 136-37; Amended Complaint, ¶¶ 5, 25. Plaintiffs have not established that the factors persuasively require that each restaurant be liable for acts of management employed by the other locations. As such, a jury should decide whether Defendant Corporations are a single entity. Further, a grant of summary judgment at this stage would disregard the corporate protections and essentially pierce the corporate veil for each entity, a result that is far reaching and requires a much higher showing than the scant allegations included in Plaintiffs' motion. As such, Plaintiffs' motion should be denied.

VIII.   **Plaintiffs have not established that the individual Defendants are "employers"**

Plaintiffs' motion on this point is entirely unsupported. Without citation to a single piece of evidence they unjustifiably conclude that Mr. Degel, Mr. Carpenter and Mr. Borysowski meet the first three factors of their test and that this makes them "employers" under the law. This type of request, absent any support, is not sufficient to support a motion for summary judgment. Further, even if their conclusory statements were true, it would not subject the individual

19

Defendants to liability on the basis of their being employers under the FLSA.

In order for an individual to be considered an employer under the FLSA the plaintiff must show that under a totality of the circumstances the individual "possessed the power to control the workers in question." Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). "A case by case analysis is required because the statute's definitions are stated in only the broadest terms." Carter, 735 F.2d at 10, n.1. The four factors to be considered are "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139 (quoting Carter, 735 F.2d at 12). While this has been interpreted to include "individual principals of corporate employers," the Second Circuit does not have a policy of holding individual managers and owners liable absent a showing under the "economic realities test." Gayle v. Harry's Nurses Registry, Inc., 2009 U.S. Dist. LEXIS 17768, *29 (E.D.N.Y.  2009); see also, Herman, 172 F.3d at 139.

Plaintiffs attempt here, without factual basis, to conclude that these factors show as a matter of law that the Individual Defendants are liable. Mr. Borysowski was a store level manager who had no financial interest in the company. W.D., pp. 8-9. Mr. Carpenter also had no financial interest in the companies that he was employed by and acted as a coordinator. Id. He did not effectuate policies and further did not have daily interaction with employees. T.C., pp 8, 48. Instead, he focused on the products being used in the restaurants and the supplies needed to properly operate a restaurant in New York City. Id. Mr. Degel, who does have a financial interest in all three stores, did not supervise or control employee work schedules, did not determine the rate of pay and did not maintain work records. W.D., 15-16. Instead, these functions were

20

undertaken on a store level by an aggregate of employees. W.D., 136-37.  As such, Plaintiffs'
request for judgment on this issue does not establish entitlement and, even if it did, this is
contradicted by these facts which preclude the grant of summary judgment.

IX. **Plaintiffs have not established claims on behalf of the five individuals who allegedly did not receive a "cash wage"**

Plaintiffs now, for the first time, allege and attempt to receive a judgment regarding
claims on behalf of five individuals' claims for failure to pay a minimum wage.  This was not a
count in the Amended Complaint and was only mentioned on behalf of Plaintiffs Arias and
Xuruc in a single, non-descript paragraph that certainly did not put Defendants on notice of a
claim of the nature which are not really described in Plaintiffs' motion for summary judgment.
A.C., ¶ 77; Jian Zhong v. August August Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) ("Fed.
R. Civ. P. 8(a) requires 'a plaintiff [to] disclose sufficient information to permit the defendant to
have a fair understanding of what the plaintiff is complaining about and to know whether there is
a legal basis for recovery.'" Id. (quoting Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000)
[some internal quotes omitted]).  Further, in their motion for conditional certification Plaintiffs
did not even mention these claims. See Doc. No. 29, filed 12/29/2008.  As such, the claims of
Plaintiff Prieto and Opt-ins Kuchta and Ortiz have no basis to be asserted and requesting
judgment in relation to these claims is patently improper.  As and for the claims of Plaintiffs
Arias and Xuruc, Defendants contend that they were not properly pled, were not the subject of
discovery other than a few questions at a deposition and thus cannot be asserted at this late time
in the litigation.

Even if the claims are permitted to proceed, Plaintiffs do not sufficiently show an
entitlement to judgment as a matter of law.  In order to succeed on their motion, Plaintiffs must

demonstrate that there are no questions of fact as to whether the employees were compensated at a rate at or above those prescribed by 29 U.S.C. § 206(a)(1) or, in the event that the employee is a tipped employee, that amount can be reduced and the tips account for the difference. Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770, *46 (S.D.N.Y. 2007). Plaintiffs' scant evidence does not support such a finding by a preponderance of the evidence.

## CONCLUSION

Because Plaintiffs fail to establish entitlement to judgment as a matter of fact and law, their motion should be denied in its entirety.

Dated:    Garden City, New York
February 10, 2011

Respectfully submitted,

By: _____
Jesse C. Rose (JR-2409)