Paul P. Rooney (PR-0333)
Amanda M. Fugazy (AF-6772)
FUGAZY & ROONEY LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 346-0570

*Attorneys for Plaintiffs.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

JUAN ALONSO, ABELARDO ARIAS, JAIME LOPEZ, RON
MENIN, LUIS NARANJO, HECTOR OLVERA, PEDRO
ORTIZ, LEONARDO PRIETO, ARKADY SHTEYNBERG,
VICTOR SOLIS, ALEJANDRO TORRES, LUIS XURUC,
and IVAN ZAPATA, on behalf of themselves and all others
similarly situated,

08 Civ. 7813 (DAB)

ECF FILED

Plaintiffs,

-against-

UNCLE JACK'S STEAKHOUSE, INC., UNCLE JACK'S
OF BAYSIDE, INC., UNCLE JACK'S STEAKHOUSE
FRANCHISE, INC., UNCLE JACK'S STEAKHOUSE
MIDTOWN, INC., WILLIAM J. DEGEL, THOMAS
CARPENTER, AND DENNIS BOROSOWSKI,

Defendants.

-------------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION *IN LIMINE* SEEKING AN ORDER PRECLUDING
EVIDENCE RELATING TO PLAINTIFFS' IMMIGRATION STATUS**


Dated: July 3, 2012
        New York, New York

## PRELIMINARY STATEMENT

Plaintiffs and the Class Members (hereinafter "Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion *In Limine* seeking an order precluding Uncle Jack's Steakhouse, Inc., Uncle Jack's of Bayside, Inc., Uncle Jack's Steakhouse Midtown, Inc., William J. Degel, Thomas Carpenter, and Dennis Borysowski (collectively, "Defendants") from eliciting or offering at trial any evidence, testimony, or information that touches upon, goes to, or involves Plaintiffs' immigration status.

The immigration status of Plaintiffs is not relevant to any claims or defenses asserted in this action. Specifically, Plaintiffs allege that Defendants violated the Fair Labor Standards Act (29 U.S.C. §201, *et seq*.) ("FLSA") and New York Labor Law ("NYLL") by failing to pay Plaintiffs minimum wages, overtime wages, spread of hours pay, and uniform allowances and by misappropriating tips. The FLSA and NYLL apply to all employees, regardless of whether they are legal residents or undocumented workers. Accordingly, the immigration status of Plaintiffs is irrelevant to this action. Further, any minimal probative value that Plaintiffs' immigration status might have for Defendants is far outweighed by the probable *in terrorem* effect that such disclosure would have on Plaintiffs.

## STATEMENT OF FACTS

Through this action, Plaintiffs seek recovery from Defendants for unpaid minimum wages, overtime wages, spread of hours pay, and uniform allowances and for misappropriating tips pursuant to the FLSA and NYLL.

From the very beginning of this case, Defendants have sought to use disclosure of immigration status as a threat to deter Plaintiffs. Indeed, immediately after the Complaint was filed, Defendants demanded that a Plaintiff produce evidence of his status. Am. Comp. ¶ 88. During the discovery phase of this litigation, Defendants repeatedly sought evidence connected

to Plaintiffs' immigration status, including birth certificates, passports, social security cards, visas, and country of origin. *See* Defendants' Second Combined Discovery Demands, Document Demand Nos. 1-3, Interrogatory Nos. 1-3, attached to Declaration of Paul P. Rooney ("Rooney Decl.") as Exhibit A. For example, Defendants made the following demands:

> **Document Demand No. 2:** Provide any and all evidence that shows your immigration status within the United States presently and for the entire period during which you were employed by any Defendant. Including but not limited to Passports, Social Security Cards and Visas.

> **Document Demand No. 3:** Provide any and all documents relating to any and all criminal or other activity which could affect your immigration status.

At the deposition of Plaintiff Abel Arias on July 28, 2010, Defendants continued their inquiry into Plaintiffs' immigration status despite Plaintiffs' prior objections to the disclosure of such information. *See* Deposition Transcript of Abel Arias, dated July 28, 2010, at 9, attached to Rooney Decl. as Exhibit B.

Defendants' sole purpose in repeatedly inquiring into the immigration status of Plaintiffs is to intimidate Plaintiffs and to suggest that Defendants will retaliate against Plaintiffs by raising doubts about their immigration status with the Department of Homeland Security. Plaintiffs anticipate that Defendants will attempt to cast doubt on Plaintiffs' testimony at trial by continuing to bully Plaintiffs and asking about their immigration status. Accordingly, Plaintiffs move to prohibit Defendants from eliciting or offering at trial in this matter, any evidence, testimony, or information that touches upon, goes to, or involves Plaintiffs' immigration status.

## <u>ARGUMENT</u>

It is well-settled precedent in the Second Circuit that evidence touching on immigration status is irrelevant and highly prejudicial in wage and hour cases and is therefore an inappropriate line of inquiry during the discovery phase and certainly inadmissible at trial. In fact, courts have consistently held that allowing inquiry into immigration status, even at the

discovery phase, creates an *in terrorem* effect, tending to chill workers' willingness to come forward with complaints and/or testimony about wage and hour violations.  This chill frustrates enforcement of the Fair Labor Standards Act, New York Labor Law and related statutes and regulations—the very laws that this litigation seeks to enforce.

### A. Defendants Should Be Precluded From Introducing Evidence Or Questioning Witnesses About Matters Related To Employees' Immigration Status At Trial As It Is Irrelevant To The Claims And Defenses In This Action

Because all workers, regardless of their immigration status, enjoy the rights and protections afforded under the FLSA and NYLL, courts have precluded as irrelevant, in both discovery and trial, evidence concerning workers' immigration status.  *See*, *e.g. Corona v. Adriatic Italian Rest. & Pizzeria*, 2010 U.S. Dist. LEXIS 15788, at *3 (S.D.N.Y. Feb. 22, 2010) ("The plaintiffs' immigration status will have no bearing on the matters of consequence to be determined during the trial of this action [] whether the plaintiffs were compensated in accordance with applicable state and federal wage and hour statutes, for the work they performed.  Therefore, the plaintiffs' immigration status is not relevant…"); *Garcia v. Bae Cleaners Inc.*, 2011 U.S. Dist. LEXIS 142990, at *2 (S.D.N.Y. Dec. 12, 2011) ("There are a number of cases that have found that evidence of immigration status has no bearing on matters of consequence to be determined under the FLSA, and to be both undiscoverable and inappropriate topics for trial."  Court also found "evidence of immigration status is irrelevant and therefore not admissible regarding any issue with respect to any New York state law claim."); *see also Nizammuddowlah v. Bengal Cabaret, Inc.*, 69 A.D.2d 875, 415 N.Y.S.2d 685 (N.Y. App. Div. 2nd Dep't April 23, 1979) (plaintiff's immigration status is not relevant to an employee's right to recover unpaid wages under New York Labor Law); *Dabrowski v. ABAX Incorp.*, 2010 N.Y. Misc. LEXIS 3507, at *10, 2010 NY Slip Op 31981U, at *9 (N.Y. Sup. Ct. July 19, 2010) (in

prevailing wage case under NYLL, finding plaintiffs' legal status "immaterial and irrelevant" and that "[e]ven if any of the plaintiffs [] are undocumented, defendants are obligated to pay them wages.  There is clear public policy of paying all workers the wages they are entitled to regardless of their legal status") (internal citations omitted).

Likewise, the U.S. Department of Labor has established an interpretation of the FLSA finding that immigration status is not relevant to liability for unpaid wages.[1]  The Department's interpretation is entitled to deference.  *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944); *Conzo v. City of New York*, 667 F. Supp. 2d 279, 291 (S.D.N.Y. Oct. 23, 2009) (adhering to Department of Labor's interpretations of the FLSA regulations which are entitled to deference).

Accordingly, here, as Plaintiffs are seeking from Defendants, *inter alia*, unpaid back wages owed to Plaintiffs under the FLSA and NYLL, any testimony or evidence concerning Plaintiffs' immigration status is irrelevant and its introduction at trial should be precluded.

## B.  Inquiry Into Immigration Status Has A Chilling Effect; Potential For Prejudice Far Outweighs Any Minimal Probative Value

Inquiry into immigration status could have a chilling effect on other potential claimants; and it could expose Plaintiffs to undue prejudice, which far outweighs any arguable probative value.  Rule 403 of the Federal Rules of Evidence provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

Courts have often held that evidence touching on a plaintiff's immigration status is not admissible in wage and hour cases due to the high probability of prejudice.  *See Flores v.*

---

[1]  The Department "has had a longstanding and consistent interpretation that the FLSA includes all workers regardless of immigration status," and "has successfully maintained the legal position that employer questioning regarding employees' immigration status is improper because immigration status is not relevant to liability for unpaid wages under the FLSA."  Ex. C to Rooney Decl. (Letter Brief of Solicitor of Labor, at 6, *Josendis v. Wall to Wall Residence Repairs, Inc.*, No. 09-12266 (11th Cir. Aug. 26, 2010) (listing relevant cases).

*Amigon*, 233 F.Supp. 2d 462, 465 (E.D.N.Y. 2002) ("[n]ot only does this Court find that the information is not relevant to Defendants' defense, but… even if it were, the potential for prejudice far outweighs whatever minimum probative value such information would have"). Courts have also noted the chilling effect that an inquiry into immigration status would have in such cases:

> Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim. In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, when not relevant, would present a 'danger of intimidation [that] would inhibit plaintiffs in pursuing their rights.'

*Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (internal citations omitted); *see also Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 211-212 (E.D.N.Y. 2010) (noting the "chilling effect" of inquiry into immigration status); *Widjaja v. Kang Yue USA Corp.*, 2010 U.S. Dist. LEXIS 59958, at *2-3 (E.D.N.Y. May 20, 2010) (holding that the chilling effect of immigration inquiry outweighs relevance of any disclosure of immigration status).

Here, the Defendants have no compelling reason to contravene well-established precedent prohibiting evidence of immigration status in the context of a wage and hour action. Therefore, Rule 403 requires exclusion of any documents, testimony, or even implication that touches on Plaintiffs' immigration status.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion *In Limine* precluding Defendants from eliciting or offering at trial in this matter any evidence, testimony, or information that touches upon, goes to, or involves Plaintiffs' immigration status.

Dated: New York, New York
        July 3, 2012

Respectfully submitted,

FUGAZY & ROONEY LLP

Paul P. Rooney (PR-0333)
Amanda M. Fugazy (AF-6772)
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 346-0570

*Attorneys for Plaintiffs and Class Members*