*Valli, Kane & Vagnini LLP*
*Robert J. Valli, Jr. Esq.*
*Sara Wyn Kane, Esq.*
*600 Old Country Road, Suite 519*
*Garden City, New York 11530*
*(516) 203-7180 (tel.)*

*Attorneys for Certain of the Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

JUAN ALONSO, ABELARDO ARIAS, JAIME LOPEZ,
RON MENIN, LUIS NARANJO, HECTOR OLVERA,
PEDRO ORTIZ, LEONARDO PRIETO, ARKADY
SHTEYNBERG, VICTOR SOLIS, ALEJANDRO TORRES,
LUIS XURUC, and IVAN ZAPATA, on behalf of themselves
and all others similarly situated,

                     Plaintiff,

                -against-

UNCLE JACK'S STEAKHOUSE, INC., UNCLE JACK'S
OF BAYSIDE INC., UNCLE JACK'S STEAKHOUSE
FRANCHISE INC., UNCLE JACK'S STEAKHOUSE
MIDTOWN INC., WILLIAM J. DEGEL, THOMAS
CARPENTER, and DENNIS BOROSOWSKI,


                     Defendants.

-------------------------------------------------------------------------------X

08 Civ.  7813 (DAB)

**DEFENDANTS'
PROPOSED JURY
INSTRUCTIONS**

        DEFENDANTS, by and through their undersigned counsel, Valli Kane & Vagnini submit

the following Proposed Jury Instructions for the above captioned matter pursuant to the Court's

Individual Rules.   Where the parties have agreed upon the charge it is noted in accordance with

Your Honor's individual practices.   Defendants' additions are red and Defendants' deletions

have a strike through.

## <u>PRELIMINARY JURY INSTRUCTION A – CONSENT</u>

### Nature of the Case

## <u>PLAINTIFFS' PROPOSED PRELIMINARY JURY INSTRUCTION B - CONSENT</u>

### Class and Collective Action

## <u>PLAINTIFFS' PROPOSED JURY INSTRUCTION – Changes</u>

### Plaintiffs' Claims and Defendants' Defenses

Plaintiffs contend that Defendants violated the Fair Labor Standards Act (often referred to as the "FLSA") and the New York Labor Law by failing to pay Plaintiffs and class members properly.  Plaintiffs contend Defendants: (1) violated state and federal minimum wage law by taking what is referred to as a "tip credit" to which they were not entitled; (2) violated state and federal law that forbids a restaurant or its managers to take any portion of employees' gratuities or any payment purported to be a gratuity; (3) failed to pay overtime premium pay for hours over 40 worked in a workweek; (4) failed to provide spread of hours pay; and (5) failed to pay uniform cleaning allowances.

The Plaintiffs and Class Members were what we will refer to as "Tipped Employees." The minimum wage in restaurants operates differently than it does in other businesses.  A restaurant pays what is referred to as a "cash wage" that is less than the full minimum wage. Then the restaurant receives what is called a "tip credit" towards the minimum wage.  For example, in 2007 in New York, the minimum wage was $7.15 per hour, but the restaurant had to pay wait staff who received tips only $4.60 per hour and the restaurant would receive a "credit" (called the tip credit) of $2.55 towards the minimum wage.  Thus, even if the restaurant paid the

employee only $4.60 in case, the minimum wage is considered satisfied under the law by the tip credit of $2.55 an hour, which, when combined with the $4.60 an hour, totaled $7.15 per hour.

Importantly, however, a restaurant can take advantage of the tip credit only if it follows the law that applies to it.   Notably, the restaurant, the employers its managers, and agents, cannot take any of the employees' tips.  If the restaurant or the employers its managers or agents take any of the employees' tips, the restaurant loses the tip credit and, in the eyes of the law, has failed to pay minimum wage.

At all relevant times, Uncle Jack's operated on the basis of a "tip pool."  That is, all wait staff pooled their tips and distributed them according to a point system.  Accordingly, if Uncle Jack's took any of the tips that were supposed to go into the tip pool, it loses the tip credit with respect to all of the wait staff who participate in the tip pool.

The Plaintiffs contend that Uncle Jack's unlawfully took their tips in two ways:  (1) by taking 3% of the tips charged on credit cards, purportedly to cover the credit card interchange fees incurred on those tips; and (2) taking 40% of the gratuities left by customers when Uncle Jack's held a pre-planned party and imposed a standard 25% charge on top of the bill for food and drink, and giving that money to managers and to employees Uncle Jack's called "party planners."  Plaintiffs contend that these managers and "party planners" were not permitted to participate in the tip pool.  Plaintiffs contend that as a result of Uncle Jack's taking money that Plaintiffs contend should have gone into the tip pool, Uncle Jack's loses the tip credit with respect to all members of the tip pool which in this case means all Class Members.

With respect to the credit card fees, an employer is permitted to deduct from credit card tips an amount reasonably necessary to compensate it for fees incurred in the collection or

settling of credit card transactions.  In other words Uncle Jack's is legally entitled to reimbursement from an employees tips for the costs of collecting the credit card charges.

The employer who seeks this reimbursement most only take that amount that restores it to the approximate financial posture it would have been in had it not collected the credit card tips for the employees.  Uncle Jack's contends that the credit card fees on the charges incurred at the restaurants were approximately 3% and that therefore Uncle Jacks' was legally entitled to reimbursement of employees' credit card tips to cover these credit card interchange fees because it incurred such fees in approximately that amount.  Uncle Jack's bears the burden of proving by a preponderance of the evidence that it in fact incurred credit card interchange fees of approximately 3%.

With respect to private contacted (sometimes referred to herein as "Large Parties") parties, Uncle Jack's added a 25% service charge to cost of the party, and distributed a portion of that charge to managers and party planners.  Under the law, it is illegal for an owner, employer or non-service related personnel to accept or take any potion of a gratuity or tip.  It is for you to decide whether or not the service charge that Uncle Jack's imposed upon private parties was a gratuity or tip that has to be distribute to the wait staff in full, or a permitted administrative charge , which Uncle Jack's can distribute as it deems appropriate.  The Plaintiffs allege that the service charge was a gratuity or tip.  Uncle Jack's contends that the 25% charge was a permitted "service charge," not a gratuity or tip and that, therefore, Uncle Jack's was permitted to distribute a portion of that money to managers and party planners.   Whether the 25% charge was a gratuity or tip or payment purported to be a gratuity that had to be given to the wait staff in its entirety, or instead a permitted charge that Uncle Jack's could give to managers if it wanted

4

to, is determined by what a customer would believe in light of the information provided to him or her.

~~You must presume that any charge in addition to charges for food or beverage, including any charge described as one for "service" or "food service," is a gratuity or is a charge purported to be a gratuity that must go to the wait staff.  Furthermore,~~ in determining whether a charge for the administration of a banquet, special function, or package deal is a gratuity or a permitted administrative~~service~~ charge,  the questions you must ask yourself is (1) was the fee clearly identified as an administrative fee, ~~such~~ and (2) were customers notified that the charge is not a gratuity or tip.  To overcome the presumption Uncle Jack's and the other Defendants must demonstrate, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not a gratuity.

Plaintiffs also contend that Defendants denied them overtime pay for hours over 40 that they worked in a workweek.  Plaintiffs contend that Defendants accomplished this by (1) shaving time from Plaintiffs' and Class Members' time records; and (2) having Plaintiffs and Class Members work "off the clock" without compensation.

Defendants contend that no Plaintiffs were denied overtime because no plaintiffs worked overtime.  Defendants contend that managers had to correct the clock in / clock out times because Plaintiffs created errors in the system by clocking in early, clocking out late, and not clocking out for breaks and at the end of their respective shifts.  Defendants contend that no employees worked off the clock and that even if an employee worked off the clock they were paid for all hours worked.

Plaintiffs seek to hold liable three individuals in addition to the three corporate defendants.  These individuals are William J. Degel, the owner of Uncle Jack's; Thomas Carpenter, the Director of Operations for Uncle Jack's; and Dennis Borysowski, a former General Manager of the 34th Street and Midtown Uncle Jack's locations.  Plaintiffs contend that these individuals may be held personally liable because they are considered "employers" for purposes of the FLSA and New York Labor Law.

Finally, three employees, Abelardo Arias, Leonardo Prieto, and Ivan Zapata contend that Uncle Jack's owner William Degel threatened them in retaliation for their filing of this lawsuit and seek damages for that alleged retaliation. Under the FLSA an employee who has filed a complaint or instituted any proceeding under the FLSA is protected from retaliation.  Certain plaintiffs claim that as a result of filing the FLSA a claim or joining the case they suffered retaliation.

Defendants claim that no employees were retaliated against for participation in this lawsuit and that they continued to operate the restaurants and enforce their rules and regulations.

The Plaintiffs have the burden of proof to prove a retaliation claim under both the FLSA and New York Labor Law. To state a claim of retaliation, the Plaintiffs must prove:

(1)     participation in protected activity known to the defendant;

(2)     an employment action disadvantaging the plaintiff; and

(3)      a causal connection between the protected activity and the adverse employment action

Once the Plaintiffs have proven the above, the burden shifts to the Defendant to prove they had legitimate non-discriminatory reasons for the actions that they took.

The burden then shifts back to the Plaintiffs to prove that Defendants' explanations are not true.

<u>Authority</u>: 29 U.S.C. §§ 201-19 and § 215 N.Y. Lab. Law Art. 7 § 215, Art. 19 §§ 650 *et seq.*, 12 N.Y.C.C.R.R. § 142-2.2; *Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS109007, at *11 (E.D.N.Y. Sept. 26, 2011)(employer's burden to show that it incurred sufficient credit card fees to justify the amount deducted from employees' pay); *Samiento v. World Yacht*, 10 N.Y. 3d 70 (2008); 12 NYCCRR § 146-2.18(b); *id* § 146-2.19(a) and (b); *Copantitlo v. Fiskardo Estiatorio Inc.*, 2011 U.S. Dist. 788 F. Supp. 2d 253, 286 (S.D.N.Y. 2011) (burdens for establishing that a charge was not a gratuity); 29 U.S.C § 215 (a)(3); <u>*Paz v. Piedra*, 2012 U.S. Dist LEXIS 4034, (S.D.N.Y. January 12, 2012).</u>

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1 - CONSENT

### Role of the Court

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2 - CONSENT
### Role of the Jury

## PLAINTIFFS' PROPOSED JURY INSTRUCTION  NO. 3 - CONSENT

### Role of Counsel

## PLAINTIFFS' PROPOSED JURY INSTRUCTION  NO. 4 – Changes

### Burden of Proof- Preponderance of the Evidence

This is a civil case.  Accordingly, the Plaintiffs have the burden of proving the elements of their claims by a preponderance of the credible evidence.   The Plaintiffs must prove each of the following by a preponderance of the evidence:

1.    The Defendant employed the Plaintiffs during the time period involved;

2.    Plaintiff's work was engaged in commerce or in the production of goods for commerce or Defendant's business or businesses under

unified operation or common control employed at least two persons and was engaged in commerce or the production of goods for commerce and had an annual gross sales of at least $500,000.00; and

3.   Defendant failed to pay the Plaintiff the minimum wage [and/or overtime pay] required by law.

However, on several issues in this case, the Defendants will bear the burden of proof.  The Defendants must prove each of the following:

1.   If the Defendants failed to keep accurate daily records of the hours plaintiffs worked, and the plaintiffs present evidence such as their own oral testimony as to the hours they worked, the burden will shift to the Defendants to prove by a preponderance of the evidence how many hours the Defendants contend the plaintiffs worked.

2.   Defendants must prove by a ponderance of the evidence that they incurred approximately 3% in credit card interchange fees.

3.   Defendants must prove by clear and convincing evidence that a reasonable customer would have considered the 25% large party charge to not be a gratuity.

A preponderance of the evidence means the greater weight of the evidence.  If you find that the credible evidence on a given issue is evenly divided between the parties –  "that it is equally probable that one side is right as it is that the other side is right" -   then you must decide that issue against the party having the burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence; the party must prove the fact at issue by a preponderance of the evidence.

On the other hand, the party with the burden of proving a fact by a preponderance of the evidence need prove no more than preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof- that what that party claims is more likely true than not true -  then that fact will have been proved by a preponderance of the evidence.

The clear and convincing standard of proof is higher than a preponderance of the evidence and less than the standard of beyond a reasonable doubt.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this and you should put it out of your mind.

<u>Authority</u>: Modern Fed. Jury Instructions §§ 1.10 at 3-19-20 (2010) (preponderance of the evidence standard); *Id.* § 1.11 at 3-20 (2010) (clear and convincing evidence standard); *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984) (The Supreme Court has described the clear and convincing burden of proof as requiring the movant to "place in the ultimate fact finder an abiding conviction that the truth of its factional contentions are highly probable); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 335, 338 n. 17 (S.D.N.Y. 2005); *Reich v. SNET Corp.,* 121 F.3d 58, 69, 70 n.3 (2d Cir. 1997) ("A rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating [the] law."); *Herman v. Hector I Nieves Trans, Inc.,* 91 F. Supp. 2d 435, 446-47 (D.P.R. 2000) ("To rebut Plaintiffs evidence, Defendants must produce a precise accounting of hours worked by their employees."); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18(b); id., § 146-2.19(a); Id. § 146-2.19(b); *Copantitla v. Fiskardo Estiatorio Inc.*, 788 F. Supp. 2d 253, 286 (S.D.N.Y. May 27, 2011) (Defendant must show by clear and convincing evidence that patron would have understood banquet fee was not a gratuity but would be kept by the restaurant).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 5 - CONSENT

### Direct and Circumstantial Evidence

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6 - CONSENT

### Depositions

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7 - CONSENT

**Demonstrative Evidence**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION  NO. 8 - CONSENT

**Witness Credibility**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9 - CONSENT

**Prior Inconsistent Statements**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10 - CONSENT

**Missing Witnesses**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION  NO. 11 - CONSENT

**Duty to Deliberate/Unanimous Verdict**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION  NO. 12 - CONSENT

**Right to See Exhibits and Hear Testimony; Communications with Court**


## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13 - CONSENT

**Representative Evidence**

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14 - CONSENT

**Compensable Work Time**

<u>**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15 - CONSENT**</u>

**Break Periods**


<u>**PLAINTIFFS' PROPOSED  JURY INSTRUCTION  NO. 16**</u>

**Unrecorded Hours**

Accordingly, although an employee suing for lost wages bears "the burden of proving that [s]he performed work for which [s]he was not properly compensated," that burden is lessened when the employer fails to comply with its record-keeping obligations.

If you believe that some of the Plaintiffs worked hours that were not recorded, then you may determine the number of those hours by any approach that is just and reasonable and award those Plaintiffs damages based upon those unrecorded hours in addition to the recorded hours.

You may award damages based upon unrecorded hours to all of the Plaintiffs, whether they have testified or not, based upon the Plaintiffs who have testified before you about unrecorded hours, as long as such an award is just and reasonable.

However, no award can be based upon employee speculation.



<u>Authority</u>: *Reich v. Gateway Press*, 13 F.3d 685, 701-02 (3d Cir. 1994); *Martin v. Selker Bros.*, *Inc.*, 949 F.2d 1286, 1296-98 (3d Cir. 1991); *McLaughlin v. DialAmerica Marketing*, Inc., 716 F. Supp. 812, 825 (D.N.J. 1989).

*Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009)*

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17 - CONSENT

### Calculating Damages for Unpaid Wages

### (No Charge 18 listed)

You must determine the total amount of unpaid wages, if any, that Defendants owe for the period of time between September 5, 2002 and September 5, 2008. In making this determination, you may rely on time records that you believe are accurate, the testimony of witnesses, and any other evidence presented during the trial.

You will be given a verdict form on which you must indicate the total amount of Unpaid Wages, if any, which you find Defendants owe the Plaintiffs for each year. Unpaid Wages consist of unpaid Overtime Wages and unpaid Non-Overtime Wages.

Overtime Wages are wages for hours worked over forty in a work week and are calculated by multiplying the number of hours worked in excess of forty by one and half times the regular rate of pay. Jury Instruction No. 28 explains what I mean by "regular rate of pay" which in this case is the minimum wage that applied at any given time).

Non-Overtime wages are wages for hours worked up to and including forty in a work week and are paid at the regular rate of pay.

Authority: 29 U.S.C. § 207(a); 29 C.F.R. §§ 778.107, 778.108.

### PROPOSED JURY INSTRUCTION  NO. 19 - CONSENT

### Accurate Time Records

### PROPOSED JURY INSTRUCTION NO. 20 - CONSENT

Employer's Obligation to Keep and Preserve Accurate Time Records

## PROPOSED JURY INSTRUCTION NO. 21

### Employer's Obligation to Ensure Accurate Recordkeeping

~~In determining whether Uncle Jack's satisfied its record-keeping obligations, you should not consider evidence suggesting that Plaintiffs failed to punch the time-clock properly. It was Defendants' obligation to make sure they did. Likewise, in determining how much, if any, work Plaintiffs performed that Uncle Jack's' time records do not reflect, you should not consider any evidence suggesting that Plaintiffs failed to punch the time-clock properly. It was Uncle Jack's' obligation to make sure that all of Plaintiffs and Class Members work time was recorded and compensated. You are not to hold any failure in this regard against the Plaintiffs.~~

Employees who come in before their regular starting time and remain after their end or closing time, do not have to be paid for such periods, provided they did not engage in any work during that time. Employers are required to maintain accurate time records and are permitted to adjust time records so that they accurately reflect the time worked.

Authority: *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946) ("it is the employer who has the duty . . . to keep proper records of . . . hours . . . ."); *Reich v. Waldbaum,* Inc., 833 F. Supp. 1037, 1042 (S.D.N.Y. 1993) (rejecting defendant's argument that it was the plaintiffs' failure to use its time-keeping system properly that caused its records to be inaccurate), rev'd on other grounds, 52 F.3d 35 (2d Cir. 1995); 29 C.F.R. *§§* 516.2(a)(7), 516.5(a); 12 N.Y.C.R.R. *§* 142-2.6(a)(4). 29 CFR 785.47 (Insignificant periods of time); 48 (Time Clocks)

13

-

## <u>PROPOSED JURY INSTRUCTION NO. 22</u>

### Consequences of Inaccurate Time Records

If you determine that Uncle Jack's' time records for all or part of the period between September 5, 2002 and September 5, 2008 are inaccurate or that they do not accurately reflect all of the hours that Plaintiffs worked, then Plaintiffs can meet their burden to prove the hours they worked by presenting evidence that raises a just and reasonable inference of the amount and extent of their work.  The Plaintiffs' recollections of the hours they worked can be sufficient to meet this burden.  The Plaintiffs are not required to prove the exact number of hours they worked. Once the Plaintiffs have presented testimony or other evidence from which you reasonably infer the amount and extent of their work, the burden shifts to Uncle Jack's' to rebut the Plaintiffs' evidence by proving the precise amount of work that Class Members performed or negating the reasonableness of the Plaintiffs' evidence.

If Uncle Jack's cannot satisfy this burden, you must accept the Plaintiffs' evidence concerning the hours they worked, even though the result is only approximate, and even if the award appears somewhat generous.  In other words, you must give the Plaintiffs the benefit of the doubt.  However, no award can be based upon employee speculation.

<u>Authority</u>: *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 335, 338 n. 17 (S.D.N.Y. 2005); *Reich v. SNET Corp.,* 121 F.3d 58, 69, 70 n.3 (2d Cir. 1997) ("A rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating [the] law."); *Herman v. Hector I  Nieves Trans, Inc.,* 91 F. Supp. 2d 435, 446-47 (D.P.R. 2000) ("To rebut Plaintiffs  evidence, Defendants must produce a precise accounting of hours worked by their employees.").  *Kolesnikow v.*

*Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009)*

## PROPOSED JURY INSTRUCTION NO. 23 - CONSENT

**Consequences of No Time Records of the Precise Amount of Time Worked Each Day**

## PROPOSED JURY INSTRUCTION  NO. 24 - CONSENT

**No Need for Every Class Member to Testify**

## PROPOSED JURY INSTRUCTION NO. 25 - CONSENT

**Proof of FLSA Prerequisites**

## PROPOSED JURY INSTRUCTION NO. 26 - CONSENT

**Regular Rate of Pay**

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO.  27

**Overtime Premium Pay**

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 28 - CONSENT**

**Overtime Rate of Pay**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 29**

**Credit Card Tips**

As I previously told you, the Plaintiffs claim that Uncle Jack's unlawfully took 3% of their credit card tips.  It is not disputed that Uncle Jack's took 3% of Plaintiffs' credit card tips during the entire time each of its three restaurants was in business.

Uncle Jack's contends that it lawfully took the money to cover the cost of converting credit card charges into cash.  An employer may legally subtract a sum from an employee's charged gratuity which compensates it for its approximate outlays sustained in clearing that tip and converting it into cash but no more than that amount.

It is Uncle Jack's' burden to prove by a preponderance of the evidence that it in fact incurred expenses of converting credit card tips into cash in an amount equal to approximately at least 3% of those tips on average each month.

If Uncle Jack's fails to prove by a preponderance of the evidence that it incurred credit card interchange fees of approximately at least 3% each month, then you must hold it liable for violating state and federal minimum wage law and award plaintiffs damages equal to: (1) the amount of the tip credit Uncle Jack's used to satisfy the minimum wage; and (2) the difference between the amount of credit card tips Uncle Jack's took and the amount of credit card fees it actually incurred.

If Uncle Jack's has not placed into evidence records showing the amount of credit card interchange fees it incurred at a particular restaurant in a particular month, you should infer

from the absence of such records that those records would support Plaintiffs' claims that Uncle

Jack's did not, in fact, incur credit card interchange fees of at least 3% in any given month.

<u>Authority</u>: *Myers v. Copper Cellar Corp.,* 192 F.3d 546, 553, 555 (6th Cir. 1999) ("the

employer may . . . withhold a standard composite percentage from each credit card tip . . . *as*

*long as the employer proves by a preponderance of evidence that*, in the aggregate, the amounts

collected from its employees, over a definable time period, have reasonably reimbursed it for no

more than its total expenditures associated with credit card tip collections) (emphasis added).

*Widjaja v. Kang Yue U.S.A. Corp.*, 2011 U.S. Dist. LEXIS 109007, at *28 (E.D.N.Y. Sept. 26,

2011) ("Although defendants were entitled to deduct from charged tips an amount necessary to

compensate for credit card processing fees, defendants have failed to adduce sufficient evidence

showing that the amounts withheld were pursuant to an agreement with the credit card

companies ... Imposing this duty on defendants is reasonable, as the employer is obviously in

the best position to know the terms of its own credit card agreements, and it is consistent with

the employer's firmly established duties to maintain accurate records for FLSA purposes . . . ");

*Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS 109007, at *26-28

(E.D.N.Y. Sept. 26, 2011); *De Vos v. Lee*, 2008 U.S. Dist. LEXIS 58817, at *5-6

(E.D.N.Y. July 29, 2008) (failure to produce responsive documents in defendants'

possession or the possession of their accountant could result in drawing an adverse

inference toward those particular facts).

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 30</u>

**Defendants' Burden of Proving By Clear and Convincing Evidence That A Reasonable Patron Would Have Believed That The 25% Surcharge Imposed On Large Parties Was Not A Gratuity**

Plaintiffs contend that Uncle Jack's broke the law by allowing its managers and agents to take part of the 25% surcharge imposed upon "Large Parties."  Uncle Jack's denies this allegation. Uncle Jack's contends that the service charge was not a gratuity and therefore tipped employees are not entitled to 100% of the ~~service~~ charge and that it can be divided as decided by the employer.  In the instant case Uncle Jack's distributed the proceeds of the service charge amongst all persons who were responsible for the party from inception to conclusion, including managers and party planners.

It is unlawful for a restaurant, its managers, or its agents to take any part of a gratuity or of a "charge purported to be a gratuity."  A charge is one that is "purported to be a gratuity" if a reasonable customer would understand that such charge to be a gratuity.

You should presume that any charge in addition to charges for food or beverage, including but not limited to any charge for "service" or "food service," is "a charge purported to be a gratuity" that would be unlawful for a restaurant or its managers or agents to take for themselves.  Furthermore, a charge for the administration of a banquet, special function, or package deal must be clearly identified as such and customers must be notified that the charge is not a gratuity or tip.

Uncle Jack's has the burden of demonstrating, by <u>clear and convincing evidence</u>, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity.

<u>Authority</u>: N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18(b); id., § 146-2.19(a); Id. § 146-2.19(b); *Copantitla v. Fiskardo Estiatorio Inc.*, 788 F. Supp. 2d 253, 286 (S.D.N.Y. May 27, 2011).

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 31</u>

**Managers ~~Can Never~~ Shar~~inge~~ In A Tip Pool**

The practice of forced sharing of tips with managers is illegal regardless of whether or not the members of management were engaged in restaurant services that could be the subject of tipping.

Accordingly, if you find that the 25% surcharge imposed upon large parties was a "gratuity" or "charge purported to be a gratuity" and that managers took any part of it you must find that the taking of that money was unlawful, regardless of what activities the manager was engaged at the particular time.  Furthermore, you must award Plaintiffs: (1) damages in the amount of the tip credit Uncle Jack's took to satisfy the minimum wage; and (2) you must award Plaintiffs the amount of money the managers took.

<u>Authority</u>: *Gillian v. Starjem Rest. Corp.*, 2011 U.S. Dist. LEXIS 115833, at *11 (S.D.N.Y. Oct. 4, 2011); *Shahriar v. Smith & Wollensky Rest. Group*, 2011 App. LEXIS, at *7 (2d Cir. Sept. 26, 2011) ("[a]n employer loses its entitlement to the tip credit where it requires tipped employees to share tip with (1) employees who do not provide direct customer service or (2) managers."

If you find that the service charge included in the bill to private party customers was in fact a service charge you have found in favor of the defendant on this issue.  However, if you find the service charge was in fact a gratuity then you must determine if the Restaurant managers, assistant managers and on occasion party planners were entitled to a portion of that gratuity.  Under Federal Law an employee who has distinct duties on one shift may qualify as a tipped employee for that shift, if that shift involves customer interaction that is more than *de minimis*.  In this case Uncle Jack's claims that because restaurant managers had more than *de minimis* contact with the customers booking private parties, those managers were entitled to share in the

service charge, if such charge is deemed a gratuity.  Accordingly, with respect to private/contract

parties you must determine if managers, assistant managers and party planners engaged in any of

the following duties:


    a. Supplying and discussing the menu
       i. Food and Drinks
    b. Booking the party – Fees and service charges
    c. Interacted with the guests, such as greeting, during the event and at the conclusion
      of the event
    d. Enhanced the customer's experience

29 CFR §§ 531.54 and 56(e); Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.
659 F.3d 234, 240 (2nd. Cir 2011), Garcia v. La Revise Associates LLC, 2011 U.S. Dist.
LEXIS 3325, (S.D.N.Y. January 13, 2011)  Samiento v. World Yacht, 10 N.Y.3d 70
(2008),  Weinberg v. D-M Rest.Corp., 53 N.Y.2d 499 (1981).

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 32</u>

~~Forced~~ **Sharing of Tips with employees who do not provide direct customer service**

In addition to it being unlawful to allow managers to share in employees' tips, it is unlawful for an employer to force tip sharing with employees who do not provide direct customer service in the restaurant.   Accordingly, if you find that the Party Planners did not provide direct service to the customer during the meal in the restaurant, then it was unlawful for Defendants to allow Party Planners to share in employees' tips.  Furthermore, you must award Plaintiffs: (1) damages in the amount of the tip credit Uncle Jack's took to satisfy the minimum wage; and (2) you must award Plaintiffs the amount of money the managers took.

<u>Authority</u>: *Shahriar v. Smith & Wollensky Rest. Group*, 2011 U.S. App. LEXIS, at *7 (2d Cir. Sept. 26, 2011).

Accordingly, with respect to private/contract parties you must determine if managers, assistant managers and party planners engaged in any of the following duties:

a.  Supplying and discussing the menu
    i. Food and Drinks
a.  Booking the party – Fees and service charges
b.  Interacted with the guests, such as greeting, during the event and at the conclusion of the event
c.  Enhanced the customer's experience

ID to instruction 31

23

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 33</u>

**Loss of Tip Credit If Employer, Its Managers, or Agents Take From The Tip Pool**

If you find that the service charge that Uncle Jacks applied to private party contracts was in fact a gratuity and you find that managers and party planners did not provided services that are traditionally tipped services and you find that the managers and party planners had only *de minimis* contact with customers, then you have found that Uncle Jacks improperly included those persons in the tip pool.  In such a circumstance, a restaurant employer loses the benefit of the tip credit under both New York and federal law for any workweek in which the restaurant, its managers, or its agents took money from the tip pool with respect to all employees who participated in the tip pool during that workweek.

<u>Authority</u>: *Copantitla v. Fiskardo Estiatorio Inc.*, 2011 U.S. Dist. LEXIS 58670, at *79 (S.D.N.Y. May 27, 2011) (holding that "[a]dditionally, defendants' violation of N.Y. Lab. Law § 196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit") (citing *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007)); *Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS109007, at *11 (E.D.N.Y. Sept. 26, 2011) (citing *Lu* for the proposition that "employers are not entitled to the tip credit under state or federal law if they retain any portion of employees' tips").

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 34 - CONSENT**
**Spread of hours Pay**


**PLAINTIFFS' PROPOSED INSTRUCTION NO. 35**

**Uniform Cleaning Allowances**

Under New York law the clothing worn by an employee, at the request of the employer, while performing job-related duties, is considered a uniform if that clothing may not be worn as part of an employee's ordinary wardrobe. *N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13.* Additionally, . under New York law, if an employer If you find that Uncle Jack's requiresd employees to purchase and wear uniforms that are of a specific type and style of clothing such as a blouse, vest or or jacket of a specific or distinctive style, color, or quality, such clothing iswould be considered a "uniform" for purposes of the law.

If clothing that an employee is required to wear is deemed a uniform, the employer is required to pay for the cost of cleaning and maintenance of that uniform. only if those costs would reduce an employee's pay below the statutory minimum wage. For example, a tuxedo is considered a "uniform" for purposes of the law and employer's requiring their employees to wear a tuxedo must provide a cleaning allowance for any employee required to wear a tuxedo.

In this case, pPlaintiffs contend that they were required to wear uniforms clothing that they could not wear outside of Uncle Jack's and therefore they are entitled to the cost of cleaning and maintenance as set forth in the law as a "uniform Cleaning Allowance."were required to wear a uniform. Uncle Jack's contends that the clothing theyPlaintiffs were required to wear either black plants a whiteand a white dress shirt or a tuxedo, and that such clothing is was not a uniform under New York law because it was clothing they could wear outside of the workplace.

Garcia v. La Revise Associates LLC, 2011 U.S. Dist. LEXIS 3325, (S.D.N.Y. January 2011) ~~A restaurant must pay for or provide any clothing considered a "uniform" and provide an allowance payment to cover the costs of uniform cleaning.~~ If you find that Uncle Jack's required plaintiffs to purchase and wear uniforms that are of a specific type and style of clothing such as a blouse, vest or or jacket of a specific or distinctive style, color, or quality, such clothing would be considered a "uniform" for purposes of the law.  A tuxedo is considered a "uniform" for purposes of the law and its purchase must be covered by Uncle Jack's and Uncle Jack's must provide a cleaning allowance for any employee required to wear a tuxedo.

The uniform cleaning allowances changed over time and were the following amounts during the following relevant time periods:

UNIFORM CLEANING ALLOWANCE AMOUNTS:

| Year | 30 hours or more/week | 20-30 hours per week | 20 hours or less per week |
|---|---|---|---|
| 2008 | $8.90 | $7.00 | $4.25 |
| 2007 | $8.90 | $7.00 | $4.25 |
| 2006 | $8.40 | $6.60 | $4.00 |
| 2005 | $7.45 | $5.90 | $3.55 |
| Up to 1/1/2005 | $6.40 | $5.05 | $3.05 |

Authority: 12 N.Y.C. R.R. §137.13;  *Ayres v. 127 Rest. Corp.*, 12 F.Supp.2d 305, 310 (S.D.N.Y.1999);

Garcia v. La Revise Associates LLC, 2011 U.S. Dist. LEXIS 3325, (S.D.N.Y. January 2011) .

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 36 - CONSENT

### Integrated Enterprise Liability

## PROPOSED JURY  INSTRUCTION NO. 37 - CONSENT

### Individual  Liability

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 38

### Willfulness

If Defendants' Uncle Jack's knew or showed reckless disregard for the fact that its conduct was prohibited by the Fair Labor Standards Act, then its conduct was willful.[1]

A Plaintiff with a claim under the FLSA against Defendants is entitled to recover unpaid wages for two years prior to when this lawsuit was filed (September 5, 2008) or two years prior to when the Plaintiff joined the FLSA action.  If you find that Uncle Jack's willfully violated the FLSA, the Plaintiff is entitled to recover lost wages up to three years before this lawsuit was filed (September 5, 2008) or three year prior to when the Plaintiff joined the FLSA action.

Plaintiff must prove to you that Defendants' actions were willfull.

Authority: Ninth Circuit Manual of Model Jury Instructions - Civil, 2007 ed., Jury Instruction 5.1; 29 C.F.R. § 778.114; 29 C.F.R. § 778.113; 29 U.S.C. § 255(a).

Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).

---

[1] 3C Fed. Jury Prac. & Instr. § 175.35 (5th ed. West 2005); 29 U.S.C. § 255.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 39

### Retaliation – What Conduct is Unlawful

In order to establish a prima facie case of retaliation  under the FLSA and the New York Labor Law, a plaintiff must prove by a preponderance of the evidence:

1. That ~~the defendant was aware of~~ one or more plaintiffs' participat~~edion~~ in protected activity;

2. That defendants were aware of the protected activity;

3. That an adverse employment action was taken against the plaintiffs; and

4. That the protected activity was a substantial motivating factor in the adverse employment action as to that plaintiff.

A plaintiff's filing of a lawsuit under the FLSA and New York Labor Law is protected activity.

Authority:  *Lambert v.* Ackerly, 180 F.3d 997, 1008 (9th Cir. 1999).

Paz v. Piedra, 2012 U.S. Dist LEXIS 4034, (S.D.N.Y. January 12, 2012)

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 40**
**Retaliation - Compensatory Damages**

You may award Plaintiffs Arias, Prieto, and Zapata compensatory damages for

injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation,

and loss of enjoyment of life.  There is no requirement that a claim of emotional

distress be supported by proof of expenses, lost earnings, or specifically measurable

damages.  No expert testimony is necessary to prove such harm, and you may rest your

findings solely on testimony.

However, the burden of proof is on the plaintiffs.  You may decide to award no

damages because Plaintiffs' have failed to present any evidence of physical

manifestations or because they failed to seek medical treatment for their alleged

damages. Annis v. County of Westchester. 136 F.3d 239, 249 (2d. Cir. 1998).


Authority: 29 U.S.C. § 216(b); N.Y. Lab. L. Art. 7 § 215(2); *Ting Yao Lin v. Hayashi
Ya*

*II, Inc.,* 2009 U.S. Dist. LEXIS 12963, at **26-28 (S.D.N.Y. Jan. 30, 2009) (awarding

emotional distress damages to plaintiffs in NYLL retaliation action based on their

testimony alone); *Oi Kwan Lai v. Eastpoint Int'l, Inc.,* 99 CIV. 2095, 2002 U.S. Dist.

LEXIS 2987, at **3-4 (S.D.N.Y. Feb. 22, 2002) (awarding emotional distress damages

in FLSA retaliation action); *Moore v. Freeman,* 355 F.3d 558, 564 (6th Cir. 2004)

(upholding award of $40,000 to plaintiff in FLSA retaliation action based on evidence

that the stress of losing his job demoralized him, strained his relationships with his

family, and negatively affected his sleeping habits and appetite).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 41**
**Retaliation -  Punitive Damages**

You may award Plaintiffs Arias, Prieto, and Zapata punitive damages for their retaliation claims.  Punitive damages are not available for their unpaid wage claims under the FLSA and NYLL.  The purpose of punitive damages is to punish a defendant for malicious or reckless acts and thereby to set an example in order to deter the defendant and others from committing similar acts in the future.  ~~Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct~~.  There is no exact rule by which to determine the amount of punitive damages and the law does not require you to award punitive damages.  In this regard, the wealth of Defendants is relevant to the assessment of punitive damages. (The issue of wealth is an issue after a finding that punitive damages should be awarded) Hartford Accident and Indemnity Company v. Village of Hempstead, 48 N.Y.2d 218 (1979).

To recover punitive damages, Plaintiffs Arias, Prieto, and Zapata must show by a preponderance of the evidence that Defendants acted with malice or reckless indifference to their protected rights under the law. An act is malicious or reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the rights of others.

Authority: 29 U.S.C. § 216(b); N.Y. Lab. L. § 215; *Sines v. Serv. Corp. Int'l,* 03 Civ. 5465, 2006 U.S. Dist. LEXIS 82164, at **4-6, 10 (S.D.N.Y. Nov. 8, 2006) (citing Seventh Circuit precedent holding that punitive damages are available to plaintiffs who prove retaliation under the FLSA and affirming jury's  $130,000

punitive damages award); *Parrish v. Sollecito,* 280 F. Supp. 2d 145, 162 (S.D.N.Y. 2003) (standard for awarding punitive damages is whether defendants acted "with malice or [] reckless indifference to the federally protected rights of an aggrieved individual"); F. O'Malley, et al., Federal Jury Practice and Instructions *§* 171.94 (5th ed. 2007) (punitive damages) (modified).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 42 - CONSENT

### Retaliation - Nominal Damages

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 43 - CONSENT

### Nominal Damages and Punitive Damages

Dated: July 3, 2012
         New York, New York

                              Respectfully submitted,

                              VALLI KANE & VAGNINI

                              By:_____
                                  Robert J. Valli, Jr. 9RV-9995)
                                  Valli Kane & Vagnini LLP
                                  600 Old Country Road, Suite 519
                                  Garden City, NY 11514
                                  Attorneys for Defendants