**VALLI KANE & VAGNINI LLP**
*Attorneys for Certain Defendants*
**600 OLD COUNTRY ROAD, Suite 519**
**GARDEN CITY, NY  11530**
**(516) 203-7180**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JUAN ALONSO, ABELARDO ARIAS, JAIME LOPEZ,
RON MENIN, LUIS NARANJO, HECTOR OLVERA,
PEDRO ORTIZ, LEONARDO PRIETO, ARKADY                          08 Civ.  7813 (DAB)
SHTEYNBERG, VICTOR SOLIS, ALEJANDRO TORRES,
LUIS XURUC, and IVAN ZAPATA, on behalf of themselves          **DEFENDANTS'**
and all others similarly situated,                           **TRIAL**
                 Plaintiff,                    **MEMORANDUM**
           -against-                              **OF LAW**
UNCLE JACK'S STEAKHOUSE, INC., UNCLE JACK'S
OF BAYSIDE INC., UNCLE JACK'S STEAKHOUSE
FRANCHISE INC., UNCLE JACK'S STEAKHOUSE
MIDTOWN INC., WILLIAM J. DEGEL, THOMAS
CARPENTER, and DENNIS BOROSOWSKI,

            Defendants.
-------------------------------------------------------------------------------X
        DEFENDANTS, by and through their undersigned counsel, Valli Kane & Vagnini LLP

submit the following Memorandum of Law pursuant to the Court's Individual Rules tracking the

legal issues raised in the Joint Pre Trial Statement.

## Table of Contents

**STATEMENT OF FACTS** ..................................................................................................1
  OVERTIME ...............................................................................................................1
  LARGE PARTY TIPS.................................................................................................2
  CREDIT CARD FEES................................................................................................2

**POINT 1** What are the parties' respective burdens on the issue of whether Defendants' deduction of 3% from Plaintiffs' credit card tips was lawful or unlawful? .....................................3

  **POINT 1(a)** Is there a "de minimis" exception to the rule that restaurants must ensure their employees receive all of their tips in order to qualify for a "tip credit" regarding monies taken from tips to cover credit card charges?............................................................................3

  **POINT 1(b)** If Defendants took any portion of Plaintiffs tips, what remedies are Plaintiffs entitled to receive? .....................................................................................................................6

**POINT 2** What are the parties' respective burdens with respect to whether Defendants' taking of a portion of the 25% surcharge it imposed on large parties was lawful or unlawful? ...................7

**POINTS 3 & 4** May Managers participate in a tip pool if they: (a) perform service duties; or (b) do not meet the definition of an "employer" under the FLSA? Under what circumstances, if any, may "party planners" participate in a tip pool? ...........................................................................8

**POINT 5** What records were Defendants required to keep and what is the legal effect if Defendants failed to keep certain records required by the NYLL or FLSA? ..............................10

**POINT 6** Under what circumstances are tipped employees entitled to spread of hours pay? ....11

**POINT 7** Under what circumstances are tipped employees entitled to uniform allowances?
a)    Were tuxedoes "uniforms" for which Uncle Jack's was obligated to pay cleaning allowances?
b)    Are paisley vests and other work clothing "uniforms" for which Uncle Jack's was obligated to pay cleaning allowances? .......................................................................................12

**POINT 8** If an employee received only tips as compensation, what remedy is the employee entitled to receive? .....................................................................................................................14

**POINT 9** What legal standard applies to the issue of whether the three Uncle Jack's restaurants comprise a "single employer?" ..................................................................................................15

**POINT 10** What legal standard applies to the issue of whether the three individual defendants are "employers" for purposes of the FLSA and New York Labor Law? .....................................16

**POINT 11** What legal standard applies to the issue of whether Defendants' conduct is "willful" for purposes of the FLSA and NYLL?.........................................................................................17

**POINT 12** What legal standard applies to the issue of whether Defendants are liable for liquidated damages under the FLSA? .........................................................................................18

**POINT 13** Do the NYLL amendments imposing 100% liquidated damages under the NYLL apply retroactively? .................................................................................................................19

**POINT 14** How is overtime pay calculated in the event the jury determines that the 25% charge added for large parties is a "compulsory charge for service" and not a "tip?" .............................20

**POINT 15** Defendants are liable for retaliation in their conduct towards plaintiffs, if a reasonable employee would have found defendants' actions materially adverse. ......................20

## STATEMENT OF FACTS

The corporate Defendants consist of three separate Uncle Jack's Steakhouse restaurants, operating within New York City (Midtown, Westside and Bayside).  Uncle Jack's employees receive well in excess of the minimum wage in salary and tips.

The individual defendants are William Degel, the majority owner of the Uncle Jack's restaurants, Thomas Carpenter, the former general manager of the restaurants and Dennis Borosowski, a former restaurant manager.

### OVERTIME

Plaintiffs claim that although employees worked in excess of forty (40) hours in a week, no employee was ever paid overtime.  Plaintiffs' allege that "Uncle Jack's manipulated Plaintiffs' time records by shaving off time to make it appear that none of the Plaintiffs worked overtime."   However, the record and in particular the deposition testimony of Plaintiffs, evidences that Plaintiffs were not scheduled to work more than forty (40) hours in a week and that the clock-in and clock-out records regularly had to be adjusted to properly reflect the actual time employees worked.  Plaintiffs consistently clocked in early, clocked out late, failed to clock out for breaks, or simply did not clock in or out.

### LARGE PARTY TIPS

There is no dispute that the Uncle Jack's restaurants contracted, on a regular basis, to hold private events.  For these events they sought to include a twenty-five percent service charge on these parties.  A party contract typically included a set menu (food and beverage), changes to ambience, entertainment, lighting, flowers, and use of a special banquet room.  The twenty-five percent service charge was included on a written and executed contract.  These "contract parties" required a liaison to ensure compliance with their individual circumstances and advanced preparation by management and the party planner when one was employed.   In exchange for these extended roles, requiring the restaurants' management to perform numerous extra tasks in preparation for and during the event, they were provided

1

with a portion of the service charge as a type of commission.   At all times the customer booking the private party was told prior to and leading up to the event that the charge was a "service charge" which is how it was listed on the signed contracts.

Plaintiffs contend that the service charge was a gratuity and thus, should have been provided to the tipped staff.  Defendants contend that the service charge was in fact a service charge and was distributed to those persons who were both responsible for and worked the event.  Defendants contend further that even if it were a gratuity, it was properly distributed to persons operating in a position or performing traditionally tipped duties.

CREDIT CARD FEES

Defendants charged 3 % on all tips charged to a credit card to recoup the transaction fees charged by the credit card companies.  Plaintiffs' contend that the 3% charge was excessive because it exceeded the actual amount charged by the credit card companies.  Uncle Jacks contends that the amount charged for the credit card fees, was approximately 3%, including charge-backs and other capital requirements for operating the credit card processing machines.

# POINT 1

## Question:

What are the parties' respective burdens on the issue of whether Defendants' deduction of 3% from Plaintiffs' credit card tips was lawful or unlawful?

## Answer:

The burden is on the Defendant to prove that the deductions from the employees tips did not enrich the defendant, but instead, returned or restored the defendant to the financial condition it held prior to the fees incurred by defendant when it converted the credit card charge into cash. Widjaja v. Kang Yue USA Corp., 2011 U.S. Dist. LEXIS 109007 (E.D.N.Y. Sept 21, 2010)

2

## POINT 1(a)

**Question:**

Is there a "de minimis" exception to the rule that restaurants must ensure their employees receive all of their tips in order to qualify for a "tip credit" regarding monies taken from tips to cover credit card charges?

**Answer:**

At present it is well settled law that an employer may deduct the amount of credit card fees incurred in the processing of credit card charges from the amount of tips that an employee receives. Myers v. Copper Cellar Corp., 192 F.3d 546, 554 (6th Cir. 1999); Widjaja v. Kang Yue USA Corp., 2011 U.S. Dist. LEXIS 109007 (E.D.N.Y. Sept 21, 2010); Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1371 (S.D. Fla. 2009); Gillis v. Twenty Three E. Adams St. Corp., 2006 U.S. Dist. LEXIS 12994, *6 (N.D. Ill. 2006).

In the case at bar there is no factual dispute that Defendants took 3% of all credit card charges, including tips and that it was to cover the costs of converting credit card charges into cash. It appears generally that the minimum costs to defendants on all credit card charges are 2.2% for Visa/Mastercard and 2.8% for American Express. At times the American Express Charges were 2.9%. These are minimum amounts and can be and are increased each month to cover duplicate charges, charge backs, and miscellaneous fees. Using an average of both Visa/Mastercard and American Express we have estimated a minimum Credit Card fee cost of 2.5%. Defendants' accountant estimated the actual cost for one of the locations to slightly over 2.9%. Plaintiff has estimated the tip totals from each location and for purposes of this argument we are not disputing Plaintiff's calculations.

For the entire six year period or the period of operation, Plaintiffs have estimated the tip totals to be as follows:

1) 34th Street - $3,380,030.96

2) Bayside - $1,512,745.48

3) Midtown - $ 215,284.35

Using the 3% figure, Defendants took the following from each tip pool.

1) 34th Street - $101,400.93

2) Bayside - $45,382.36

3) Midtown - $6,458.53

Using the average of 2.5%, the minimum actual cost for each location regarding converting the tips into cash for the employees is as follows:

1) 34th Street - $84,500.77

2) Bayside - $37,818.64

3) Midtown - $5,382.11

Thus, the difference between the minimum cost to Uncle Jacks and the 3% taken for the entire six year period or for the period the locations were open is as follows:

1) 34th Street - $16,900.15

2) Bayside - $7,563.73

3) Midtown - $1,076.42

Broken down by month the figures are as follows:

4

      1)  34th Street - $234.72

      2)  Bayside - $105.05

      3)  Midtown - $ 107.64

When the figures are broken down further into individual days and number of employees who worked that month, the actual cost per employee is pennies per day.  It is defendants' position that the aforementioned costs taken from the tip pool are "De Minimus" and simply returned Defendants to the approximate financial position they were in prior to incurring the credit card interchange fees.  In Widjaja v. Kang Yue USA Corp. Id.  Judge Mauskopf, relying on Myers v. The Copper Cellar, 192 F.3d at 554-55, held that

> the employer must prove that its total deductions from employees tip incomes did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period.

Id at 7.

However, the credit card costs to Defendants did not end with the above analysis.   On occasion, Defendants were subject to a "charge back."  A charge back requires the Defendants to disgorge a prior credit card charge due to any number of reasons.  This disgorgement included any tip that was part of the original charge.  It was Defendants' policy not to seek reimbursement from the tip pool.  Accordingly, the tip pool was increased and Plaintiff's received monies to which they were not entitled.

Thus, Defendants' were not enriched by taking the 3% and therefore, should maintain the tip credit.

## POINT 1(b)

### Question :

If Defendants took any portion of Plaintiffs tips, what remedies are Plaintiffs entitled to receive?

### Answer:

Defendants are entitled to the benefit of the employer tip credit, as the taking of the credit card fees is proper under the law.  Similarly, the inclusion of traditionally tipped persons in a party tip pool does not invalidate the Defendant's right to the tip credit.  The FLSA permits an employer to utilize a "Tip credit" to pay "tipped employees" a sub minimum wage under certain circumstances.  Four conditions must be met in order for an employer to qualify for a tip credit.

(1) employers may only apply the tip credit to a tipped employee as defined by the FLSA meaning an employee engaged in an occupation who customarily and regularly receives more than $30 a month in tips;

(2)  the employer may not apply the tip credit to the wages of an employee unless such employee has been informed by the employer of the provisions of the FLSA;

(3) the employee must receive at least minimum wage when direct wages paid by the employer and tips are combined;

(4) all tips received by an employee must be retained by him or her except when the employee contributes those tips to a valid tip pool among employees who customarily and regularly receive tips.

29 U.S.C. §203(m) & (t), 29 USC § 206(a)(1)(C).

6

**POINT 2**

**Question:**

What are the parties' respective burdens with respect to whether Defendants' taking of a

portion of the 25% surcharge it imposed on large parties was lawful or unlawful?

**Answer:**

Defendants included a service charge of 20% to 25% on virtually all of their private party

contracts. Plaintiffs' contend that the service charge was actually a gratuity and as such only

persons who worked that party and who are lawfully in the tip pool are entitled to receive monies

from the "gratuity." Uncle Jack's contends that the service charge was not a gratuity and

therefore tipped employees are not entitled to 100% of the service charge and that it can be

divided as decided by the employer. In the instant case Uncle Jack's distributed the proceeds of

the service charge amongst all persons who were responsible for the party from inception to

conclusion.

The question of whether a service charge is really a gratuity was addressed by Judge

Holwell in Copantitla v. Fiskardo Estiatorio, 788 F. Supp 2d 253 (S.D.N.Y. 2011); (see e.g.)

Samiento v. World Yacht, 10 N.Y.3d 70 (2008). In Copantitla, Judge Holwell, used an opinion

letter from the New York Department of Labor which identified what issues existed regarding

whether a service charge is really a gratuity. The factors are (1) the font size and prominence of

the notice; (2) the label used for the mandatory charge; (3) whether the purpose and method of

calculating the charge are described; (4) whether the notice discloses that no portion is being

distributed to the service staff and that patrons should leave an additional payment as a tip; and

(5) whether a separate line labeled gratuity or tip on the banquet contract existed. Garcia v. La

7

Revise Associates LLC, 2011 U.S. Dist. LEXIS 3325, (S.D.N.Y. January 13, 2011), Samiento v. World Yacht, 10 N.Y.3d 70 (2008),   Weinberg v. D-M Rest.Corp., 53 N.Y.2d 499 (1981).


## POINTS 3 & 4

**Questions**:

(3) May Managers participate in a tip pool if they: (a) perform service duties; or (b) do not meet the definition of an "employer" under the FLSA?

(4) Under what circumstances, if any, may "party planners" participate in a tip pool?

**Answers:**

Plaintiffs assert the argument regarding the sharing of private party gratuities with Restaurant Managers and Party Planers.  However, this argument is only reached following a finding that the private party service charge was actually a gratuity. The legal standard regarding the sharing of tips requires that the individuals in a tip-pool be of the type who "customarily and regularly" get tipped for their services. Garcia v. La Revise Assocs. LLC, 2011 U.S. Dist. LEXIS 3325, *19 (S.D.N.Y. Jan. 13, 2011) (citing Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 228-30 (S.D.N.Y. 2002)).  This standard is met if the employee "is 'part of an occupation that customarily and regularly receives tips,' or whether they have more than 'de minimis' interaction with customers as a part of their employment." Id. at *15-16 (citing Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 301 (6th Cir. 1998); Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706. 712 (S.D.N.Y. 2007); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749, at * 14, n.22 (S.D.N.Y. 2006)).

In Garcia, the plaintiffs claimed that by permitting the banquet coordinator to share in tips from contracted parties the defendants had lost the tip credit. Id. at *19. Judge Swain concluded that summary judgment was appropriate against the plaintiffs' claims for the defendants' violation of the tip-credit because there was evidence that the banquet coordinators "had regular interactions with customers in connection with core Restaurant functions" by dealing "directly with private party hosts in advance of events for planning purposes and worked directly with the hosts and their guests during the events to ensure their satisfaction." Id. at *20. "These duties constitute more than de minimis customer interaction." Id.

In the case at bar, the functions of a banquet coordinator were split between two sets of individuals: the managers of the restaurant and the party planners. Party planners were responsible for booking the parties and coordinating the events with the restaurants. Similarly, managers often helped plan and prepare for the parties. At various times during the operation of the restaurants there were no party planners. During those periods the managers dealt directly with the hosts of the event regarding planning and of course serviced the hosts and their guests during the event. Accordingly, both the managers and the party planners were ensuring that the event went as planned to the satisfaction of everyone in attendance. The party planner and the managers each received 20% (ie: 5%) of the 25% service charge with the remaining staff receiving 60% (ie: 15%). When there was no party planner involved, the managers received 20% of the service charge and the remaining staff received 80% of the service charge.

Recently in Arencibia v. 2401 Rest. Corp (2011 U.S. Dist LEXIS 146979) (D.C. December 21, 2011) Judge Kollar-Kotelly was faced with facts virtually identical to those in the case at bar. Judge Kollar-Kotelly applied the "economic reality test" considering whether the Maitre'D and the party planner had (1) the authority to hire and fire; (2) supervised and

controlled work; (3) determined the rate and method of payment; and (4) maintained employment records.  Similar to the facts in the case at bar the Defendants' restaurant managers did not have the power to hire or fire without approval, while they did supervise and control work, they did not determine the rate and method of payment and they did not maintain employment records.  Further as in Arencibia the party planners at Defendants' locations dealt directly with the customers in planning the event, negotiating price, determining menus (food and liquor) and collecting a down payment or deposit.

For the above reasons it is Defendants position that restaurant managers and party planners were properly compensated with monies, whether a service charge or a gratuity, from private parties.

## POINT 5

**Question:**

What records were Defendants required to keep and what is the legal effect if Defendants failed to keep certain records required by the NYLL or FLSA?

**Answer:**

Generally, the burden is on an employer to maintain books and records, sufficient to document the wages, hours of employment and other conditions and practices of employment of an employee. 29 U.S.C. § 211(c), N.Y. Lab. Law §§ 195(4), 196-a, 661.  However, the burden of proving work performed for which an employee claims they were not properly compensated falls on the employee. Reich v. Southern New Eng. Telcomms. Corp 121 F.3d 58, 67 (2nd Cir. 1997)

Under the FLSA the burden is on an employee to come forward and present evidence of wages and hours worked.  The employee may rely upon his/her memory or recollection, but may

not speculate.  Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp 2d. 98, 118 (S.D.N.Y. 2009).

Once an employee presents their evidence of wages and/or hours worked, the burden shifts back to the employer to either present the actual hours worked or evidence to refute the inference that the employees evidence of hours worked is reasonable.  Lanzetta v. Florio's Enters, Inc. 763 F. Supp. 2d. 615, 618 (S.D.N.Y. 2011).

## POINT 6

### Question:

Under what circumstances are tipped employees entitled to spread of hours pay?

### Answer:

Plaintiffs claim they are entitled to spread-of-hours pay in that they worked shifts that either exceeded ten hours or they worked double shifts that exceeded ten hours.  Defendants contend that because all plaintiffs received well in excess of the minimum wage in compensation for time worked, they are not entitled to spread of hours pay.  "[N]o group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law." Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007).  Employees are only entitled to the spread-of-hours pay if they received at or less than the minimum wage per hour worked. Id.; see also, (Espinosa v. Delgado Travel Agency, 2007 U.S. Dist. LEXIS 15149 at *7-8 (S.D.N.Y. 2007) ("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Franklin v.

11

Breton Int'l, Inc., 2006 U.S. Dist. LEXIS 88893, at *13 (S.D.N.Y. 2006) (the spread-of-hours provision "applies only to workers earning the minimum wage"); Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780 at *76-77 (S.D.N.Y. 2006) ("The plain text of § 142.4 [sic] ensures an additional wage only in addition to the 'minimum wage' required under New York law. It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate."). Further, this interpretation has been supported by New York State Courts. See e.g., Seenaraine v. Securitas Sec. Servs. USA, Inc., 37 A.D.3d 700, 701-702, 830 N.Y.S.2d 728, 729 (2nd Dept. 2007).

As of January 1, 2011, employers are required to pay "spread of hours" pay for all employees in restaurant and year round hotels, regardless of the employees' regular rate of pay. 12 NYCRR § 146-1.6(d). This is not applicable to the case at bar as Plaintiffs claims are from October 2002 to October 2008.

Plaintiffs do not claim, nor can they justifiably claim, that they made the minimum wage. Far from it, they made well in excess of the $7.25 per hour that the law requires. Because of this, they cannot now ask that this Court award them additional compensation under a statute that does not intend to include employees who exceed the minimum wage in their earnings.

## POINT 7

**Question:** - Under what circumstances are tipped employees entitled to uniform allowances?

a) Were tuxedoes "uniforms" for which Uncle Jack's was obligated to pay cleaning allowances?

b) Are paisley vests and other work clothing "uniforms" for which Uncle Jack's was obligated to pay cleaning allowances?

**Answer:**

Plaintiffs' claim that they were required to wear a uniform, and therefore they are legally entitled to reimbursement for uniform purchases and cleaning. Once again Defendant disputes this claim in that no uniform was required. Moreover, even if it is determined that the required dress was uniform, no employee made less than minimum wage as a result of purchasing and/or cleaning a uniform.

The law provides that "an employer may not require employees to pay for the cost of cleaning and maintaining their own uniforms if those costs would reduce their pay below the full statutory minimum wage." Garcia v. La Revise Assocs. LLC, 2011 U.S. Dist. LEXIS 3325, *18 (S.D.N.Y. Jan. 13, 2011) (citing 12 NYCRR § 137-1.8). As previously discussed, Plaintiffs made far in excess of the minimum wage. As such, Plaintiffs are not entitled to judgment as a matter of law and this claim has no merit whatsoever.

Additionally, the law provides that there is no requirement to provide this reimbursement if the uniform consists of "clothing that may be worn as part of an employee's ordinary wardrobe." Id. (quoting 12 NYCRR § 137-3.13). While Plaintiffs' claim that Uncle Jack's uniforms would not be considered part of an employee's ordinary wardrobe, other employees have sworn that the clothing (black shoes, black pants, white shirt and for some a paisley vest) could be used as part of a regular wardrobe. Finally, there is a sliding scale for reimbursement and, should Plaintiffs prevail despite the arguments provided herein, any award of damages should follow the amounts provided for by the statute. 12 NYCRR § 137-1.8(e).

13

## POINT 8

**Question:**

If an employee received only tips as compensation, what remedy is the employee entitled to receive?

**Answer:**

Plaintiffs now, for the first time, allege and attempt to receive a judgment regarding claims on behalf of five individuals' claims for failure to pay a minimum wage. This was not a count in the Amended Complaint and was only mentioned on behalf of Plaintiffs Arias and Xuruc in a single, non-descript paragraph that certainly did not put Defendants on notice of a claim. A.C., ¶ 77; Jian Zhong v. August August Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) ("Fed. R. Civ. P. 8(a) requires 'a plaintiff [to] disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" Id. (quoting Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) [some internal quotes omitted]). Further, in their motion for conditional certification Plaintiffs did not even mention these claims. See Doc. No. 29, filed 12/29/2008. As such, the claims of Plaintiff Prieto and Opt-ins Kuchta and Ortiz have no basis to be asserted and are patently improper. As and for the claims of Plaintiffs Arias and Xuruc, Defendants contend that they were not properly pled, Defendants had no notice of these claims, the claims were not the subject of discovery other than a few questions at a deposition and thus cannot be asserted at trial.

Even if the claims are permitted to proceed, Plaintiffs cannot sufficiently show an entitlement as a matter of law. In order to succeed, Plaintiffs must demonstrate whether the employees were compensated at a rate at or above those prescribed by 29 U.S.C. § 206(a)(1) or,

in the event that the employee is a tipped employee, that amount can be reduced and the tips

account for the difference. Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770,

*46 (S.D.N.Y.  2007).

## POINT 9

### Question:

What legal standard applies to the issue of whether the three Uncle Jack's restaurants

comprise a "single employer?"

### Answer:

"In determining whether two companies are a single employer, courts examine the

'interrelation of operations, common management, centralized control of labor relations and

common ownership.'" Mastrandrea v. Nassau Land Improvement Co., 1999 U.S. App. LEXIS

13959, *3-4 (2d Cir. 1999) (quoting Lihli, 80 F.3d at 747).

In Mastrandrea, the Second Circuit affirmed the decision not to consider two companies a

single employer. Id. at *4-6.  This decision was based on the lower court having found that

although the businesses operated out of the same office, were owned by the same individuals and

used the same accountant, they each had their own separate banking records, checkbooks, tax

returns and performed different types of work. Id. at *5-6.

In the case at bar, each corporation maintains its own accounts, pays employees

separately, employs separate management, has a separate location, is individually incorporated,

does not share all aspects of ownership, and engage in different business strategies as necessary

at the different locations. W.D., pp. 16, 30-32, 136-37; Amended Complaint, ¶¶ 5, 25.  Plaintiffs

have not established that the factors persuasively require that each restaurant be liable for acts of

management employed by the other locations.

POINT 10

**Question:**

What legal standard applies to the issue of whether the three individual defendants are "employers" for purposes of the FLSA and New York Labor Law?

**Answer:**

In order for an individual to be considered an employer under the FLSA the plaintiff must show that under a totality of the circumstances the individual "possessed the power to control the workers in question." Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). "A case by case analysis is required because the statute's definitions are stated in only the broadest terms." Carter, 735 F.2d at 10, n.1. The four factors to be considered are:

(1) had the power to hire and fire the employees;

(2) supervised and controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment, and

(4) maintained employment records." Herman, 172 F.3d at 139 (quoting Carter, 735 F.2d at 12).

While the factors have been interpreted to include "individual principals of corporate employers," the Second Circuit does not have a policy of holding individual managers and owners liable absent a showing under the "economic realities test." Gayle v. Harry's Nurses Registry, Inc., 2009 U.S. Dist. LEXIS 17768, *29 (E.D.N.Y. 2009); see also, Herman, 172 F.3d at 139. In this circuit the determination of whether someone is an employer under the FLSA is guided predominantly by the question of whether the person in question "possessed the power to

control the workers in question, with an eye toward the economic reality presented by the facts of each case." Lanzetta b. Florio's Enters., 763 F. Supp. 2d 615 (S.D.N.Y. 2011).

Plaintiffs claim that the facts show, as a matter of law, that the Individual Defendants are liable. Mr. Borysowski was a store level manager who had no financial interest in the company. W.D., pp. 8-9. Mr. Carpenter also had no financial interest in the companies that he was employed by and acted as a coordinator. Id. He did not effectuate policies and further did not have daily interaction with employees. T.C., pp 8, 48. Instead, he focused on the products being used in the restaurants and the supplies needed to properly operate a restaurant in New York City. Id. Mr. Degel, who does have a financial interest in all three stores, did not supervise or control employee work schedules, did not determine the rate of pay and did not maintain work records. W.D., 15-16. Instead, these functions were undertaken on a store level by an aggregate of employees. W.D., 136-37 or in the case of rate of pay, were delineated by statute. As such, none of the individual defendants would be an employer under the law.

## POINT 11

### Question:

What legal standard applies to the issue of whether Defendants' conduct is "willful" for purposes of the FLSA and NYLL?

### Answer:

Violations of the FLSA and the NYLL are considered willful when the employee can demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." Herman v. RSR Servs. Ltd. 172 F.3d. 132, 141 (2d Cir. 1999). Plaintiff bears the burden of proof on the issue of willfulness. Young v. Cooper

Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  With respect to the three main issues in the

case at Bar, (1) Overtime claims, (2) managers and party planners in the private party tip pool

and (3) the deduction of 3% from the tip pool to cover credit card fees, Defendants' conduct was

not willful. Specifically, (1) Defendants' maintained a policy that no employee should work

more than 40 hours in a week.  Plaintiffs will not be able to show any consistent violation of the

FLSA or NYLL in this regard nor that Defendant's had knowledge that there was any ongoing

violation.  (2) Managers and party planners were not included in the entire tip pool for the

restaurant, but only in the tip pool when managers and party planners worked performing duties

that are traditionally tipped; and (3) Defendant's decision to take an amount which approximated

their actual costs demonstrates the non-willful nature of any alleged violation.


## POINT 12

**Question:**

What legal standard applies to the issue of whether Defendants are liable for liquidated

damages under the FLSA?

**Answer:**

Under the FLSA an employee is only entitled to liquidated damages upon a finding that

an employer either failed to pay the minimum wage or overtime.  The amount of liquidated

damages is normally an amount equal to the minimum wage or overtime loss.  29 U.S.C §

216(b); Herman v. RSR Servs. Ltd. 172 F.3d. 132, 142 (2d Cir. 1999).

However, a District Court may deny liquidated damages to an employee, if an employer

demonstrates to the Court that the "act or omission giving rise to such action was in good faith."

Herman v. RSR Servs. Ltd/ at 142.  Under the FLSA liquidated damages are not to be applied

when the acts of the employer are not willful.  The test for whether the employer willfully

violated the law is whether the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.  Kuebel v. Black & Decker Inc., 643 F.3d 352 (2nd. Cir 2011).

Under the NYLL employees are entitled to liquidated damages equal to 25% of wages under the law, if the violation is willful.  NYLL §§ 198(1-a), 663(1). The standard under the New York Labor Law is similar to that under the Federal Law.  Kuebel v. Black & Decker Inc., 643 F.3d 352 (2nd. Cir 2011).

Based upon the facts of this case Defendants contend that none of their actions were willful and accordingly, Plaintiffs are not entitled to liquidated damages under the FLSA

## POINT 13

### Question

Do the NYLL amendments imposing 100% liquidated damages under the NYLL apply retroactively?

### Answer:

The NYLL amendments regarding 100% liquidated damages do not apply retroactively and liquidated damages should be applied, to the extent they are even warranted, as they existed at the time of the alleged violations.  Maldonado v. La Nueva Rampa, Inc.  2012 U.S. Dist. LEXIS 67058 (S.D.N.Y. May 12, 2012).

## POINT 14

**Question:**

How is overtime pay calculated in the event the jury determines that the 25% charge added for large parties is a "compulsory charge for service" and not a "tip?"

**Answer:**

Because the eventual overtime rate of pay is based upon an employees' regular rate of pay, the foundational question before the Court is how is a tipped employees' regular rate of pay calculated? Pursuant to the FLSA an employees' regular rate of pay is calculated by dividing the employees' total remuneration (except statutory exclusions) by the total number of hours actually worked in the workweek for which compensation was paid. 29 C.F.R. 778.109. Total remuneration is defined as all payments to, for, or on behalf of the employee. 29 U.S.C. 207(e).

In the case at bar, if it is determined that the 25% charge for large parties is in fact a service charge, than any amounts received by Plaintiffs' from the service charge should be included in their regular rate of pay.

## POINT 15

**Question:**

Defendants are liable for retaliation in their conduct towards plaintiffs, if a reasonable employee would have found defendants' actions materially adverse.

**Answer:**

Under the FLSA an employee who has filed a complaint or instituted any proceeding under the FLSA is protected from retaliation. Certain plaintiffs claim that as a result of filing the FLSA claim or joining the case they suffered retaliation.

Defendants claim that no employees were retaliated against for participation in this lawsuit and that they continued to operate the restaurants and enforce their rules and regulations. 29 U.S.C § 215 (a)(3)

The plaintiff has the burden of proof to prove a retaliation claim under both the FLSA and New York Labor Law. To state a claim of retaliation a plaintiff must prove:

(1) participation in protected activity known to the defendant;

(2) an employment action disadvantaging the plaintiff; and

(3)  a causal connection between the protected activity and the adverse employment action

Once the Plaintiff has proven the above, the burden shifts to the Defendant to prove they had legitimate non-discriminatory reasons for the actions that they took. The burden then shifts back to the plaintiff to prove that defendants' explanations are not true.  Paz v. Piedra, 2012 U.S. Dist LEXIS 4034, (S.D.N.Y. January 12, 2012).

Dated: July 3, 2012
Garden City, NY

Respectfully submitted,

Robert J. Valli, Jr.
Valli Kane & Vagnini LLP
600 Old Country Road, Suite 519
Garden City, NY 11530

21